United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 16, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 04-31114

---

LOUISIANA HEALTH SERVICE & INDEMNITY Co.,
d/b/a Blue Cross and Blue Shield of Louisiana
Plaintiff-Intervenor Defendant-Appellant,

versus

RAPIDES HEALTHCARE SYSTEM; STATE of LOUISIANA;
CHARLES R. FOTI, JR.,
Attorney General for the State of Louisiana
Defendant-Appellees

versus

DAUTERIVE HOSPITAL
Intervenor Defendant-Appellee

---

Appeal from the United States District Court
For the Middle District of Louisiana

---

(Civil Action No. 00-694-D-M2)

Before HIGGINBOTHAM, DeMOSS, and OWEN, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Section 40:2010 of the Louisiana Revised Statutes requires insurance companies to honor all assignments of benefit claims made by patients to hospitals. This case asks us to decide whether the Employee Retirement Income Security Act of 1974 preempts the assignment statute to the extent that it applies to fully insured ERISA plans. We hold that Louisiana's assignment statute is not preempted.

The relevant facts in this case are undisputed. Section 40:210 of the Louisiana Revised Statutes (the "assignment statute") provides, in relevant part:

> **Itemized statement of billed services by hospitals.** . . . No insurance company, employee benefit trust, self-insurance plan, or other entity which is obligated to reimburse the individual or to pay for him or on his behalf the charges for the services rendered by the hospital shall pay those benefits to the individual when the itemized statement submitted to such entity clearly indicates that the individual's rights to those benefits have been assigned to the hospital. When any insurance company, employee benefit trust, self-insurance plan, or other entity has notice of such assignment prior to such payment, any payment to the insured shall not release that entity from liability to the hospital to which the benefits have been assigned, nor shall such payment be a defense to any action by the hospital against the entity to collect the assigned benefits.[1]

The assignment statute is included in the "State Department of Hospitals" chapter of Louisiana's Public Health and Safety code. As the title indicates, the statute imposes various additional requirements on hospitals regarding itemized statements of billed services to patients. Those requirements are not at issue in this case.

Two hospitals, defendant Rapides Health Care System and intervenor Dauterive Hospital (collectively, "the Hospitals"), complained to the Louisiana Department of Insurance ("DOI") that Louisiana Health Service & Indemnity Co., d/b/a Blue Cross and Blue

---

[1] LA. REV. STAT. ANN. § 40:2010 (2004).

Shield of Louisiana, failed to comply with the assignment statute after the Hospitals terminated their participating provider agreements with Blue Cross. While the DOI investigated the complaints, ultimately concluding that Blue Cross's policy provisions violated the assignment statute, Blue Cross filed the present case against Rapides, the State of Louisiana, and the Louisiana attorney general, seeking a declaration that the assignment statute is preempted by ERISA to the extent that it applies to ERISA employee welfare benefit plans insured or administered by Blue Cross. Dauterive intervened.

All health insurance plans issued and administered by Blue Cross contain provisions governing the assignment of benefits. The parties agree that all provisions are substantially similar to the following:

**Direct Payment to Member**

1.  All benefits payable by the Company [Blue Cross] under this Benefit Plan and any amendment hereto are personal to the Member and are not assignable in whole or in part by the Member. The Company has the right to make payment to a Hospital, Physician, or other Provider (instead of to the member) for Covered Services which they provided while there is in effect between the Company and any such Hospital, Physician, or other Provider an agreement calling for the Company to make payment directly to them. In the absence of an agreement for direct payment, the Company will pay to the Member and only the Member those Benefits called for herein and the Company will not recognize a member's attempted assignment to, or direction to pay, another, except as required by law.

* * *

3. If the Company has offered a Hospital, Physician, or other Provider an agreement for direct payment by the Company, but there is no such agreement in effect when Covered Services are rendered to a Member by such Hospital, Physician, or other Provider, the Company will not recognize a Member's attempted assignment to, or direction to pay, such Hospital, Physician, or other Provider. The Company will pay to the Member and only the Member those Benefits called for in this Benefit Plan and any amendment thereto.

Blue Cross divides hospitals into "participating providers" and "nonparticipating providers." Blue Cross's agreement with participating providers includes a provision allowing or requiring direct payment to the provider. With nonparticipating providers, there is no agreement, and, pursuant to the above language, Blue Cross will not honor a patient's assignment of benefits to the provider. The burden is then on the nonparticipating provider to collect its fees directly from the patient. Blue Cross does not dispute that its refusal to honor assignments to nonparticipating providers violates the assignment statute.

Blue Cross moved for summary judgment on the ERISA preemption issue in August 2001. Finding only an indirect economic effect on ERISA plans, the district court denied summary judgment, reasoning that the assignment statute "facilitate[d] and promote[d] the goals of ERISA" and that it was a health-care regulation within an area of state law that Congress did not intend to preempt. As such, the district court did not need to consider whether the statute was

-4-

saved from preemption as a law regulating insurance. In the alternative, the court concluded that the language of Blue Cross's health care plan requires compliance, because the anti-assignment provision says that such assignments will not be honored "except as required by law."[2]

Over the next two years, Blue Cross and the Hospitals litigated various other claims that were later settled and are not at issue on appeal. In June 2004, both parties filed motions for summary judgment on the preemption issue. Blue Cross argued that the Supreme Court's intervening decision in *Aetna Health Inc. v. Davila*[3] and the Third Circuit's decision in *Barber v. UNUM Life Insurance Co.*[4] required preemption of the assignment statute because it conflicted with the exclusive enforcement provision in ERISA. Adopting its previous ruling and reasoning, the district court denied Blue Cross's motion and granted the motions filed by the State of Louisiana and the Hospitals. The court concluded that because ERISA is silent regarding assignment of health benefits, the assignment statute does not alter an existing ERISA provision and, thus, was not conflict preempted. The court distinguished *Davila* and *Barber* as cases involving state statutes that altered

---

[2]*La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 213 F.Supp.2d 650 (M.D. La. 2002) (Brady, J.).

[3]542 U.S. 200 (2004).

[4]383 F.3d 134 (3d Cir. 2004).

existing ERISA provisions.  Blue Cross timely appealed.  We have jurisdiction under 28 U.S.C. § 1291.

## II

First, we address whether the plain language of Blue Cross's ERISA plans requires compliance with the assignment statute.  If so, then we would not need to reach the preemption questions.[5]  If the ERISA plans at issue do not require compliance with the assignment statute, then we must address Blue Cross's two-prong preemption attack.  Blue Cross contends, first, that the assignment statute is preempted because it conflicts with ERISA's exclusive enforcement scheme.[6]  Second, Blue Cross contends that the assignment statute is preempted as a statute that "relate[s] to" ERISA.[7]  Finally, should we conclude that the assignment statute is preempted as a statute that relates to ERISA, we must determine whether it is "saved" from preemption as a law regulating insurance.[8]  Our review is *de novo*.[9]

---

[5]*See Arana v. Ochsner Health Plan*, 352 F.3d 973, 976 (5th Cir. 2003) (declining to reach preemption question where no conflict existed); *see also Ashwander v. Tenn. Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.").

[6]Employee Retirement Income Security Act of 1974 § 502(a), 29 U.S.C. § 1132(a) (2004).

[7]*Id.* § 514(a), 29 U.S.C. § 1144(a).

[8]*Id.* § 514(b)(1)(A), 29 U.S.C. § 1144(b)(1)(A).

[9]*Provident Life & Accident Ins. Co. v. Sharpless*, 364 F.3d 634, 640 (5th Cir. 2004); *Frank v. Delta Airlines, Inc.*, 314 F.3d 195, 197 (5th Cir. 2002).

Attempting to displace the preemption issue, the Hospitals contend that there is no conflict between Blue Cross's ERISA plans and the assignment statute because the plan prohibits assignments "except as required by law." The Hospitals contend that this language modifies the express plan terms to require compliance with Louisiana's assignment statute. Blue Cross argues that this provision is trumped by a subsequent provision of the policy, which states that the plan is governed by Louisiana law "except when preempted by federal law." The district court agreed with the Hospitals, concluding that Blue Cross's policy provisions are "automatically amended . . . to conform to the requirements" of the assignment statute.[10]

We disagree. Neither policy provision displaces the preemption analysis in this case. ERISA plans must always conform to state law, but only state law that is valid and not preempted by ERISA. The presence of the phrase "except as preempted by law" serves no additional purpose, as all state laws are potentially subject to ERISA's preemptive force. The two provisions do not forestall determination of the preemption question. To that, we now turn.

---

[10]*La. Health Svc. & Indem. Co.*, 213 F.Supp.2d at 657.

Article VI's Supremacy Clause may entail preemption of state law in any of three ways: by express provision, by implication, or by a conflict between state and federal law.[11] Blue Cross advances two separate preemption arguments: first, Blue Cross contends that Louisiana's assignment statute conflicts with ERISA's exclusive enforcement scheme; second, Blue Cross contends that the assignment statute is expressly preempted as it is a law that "relate[s] to" employee benefit plans. Neither argument persuades.

1

Under general principles of conflict preemption, a law is preempted "to the extent that it actually conflicts with federal law,"[12] that is, when it is impossible to comply with both state and federal law.[13] Further, a state law is conflict preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[14]

In *Aetna Health Inc. v. Davila*, the Supreme Court reaffirmed that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and

---

[11]*See Pac. Gas & Elec. Co v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203-04 (1983); *Rice*, 331 U.S. 230.

[12]*English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990).

[13]*Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984); *Florida Lime & Avocado Growers, Inc. V. Paul*, 343 U.S. 142-43 (1963).

[14]*Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *Pac. Gas & Elec. Co.*, 461 U.S. at 203-04.

is therefore pre-empted."[15]  *Davila* involved a Texas statute that created a cause of action for any person injured by a plan administrator's failure to exercise ordinary care in the handling of coverage decisions.  Recognizing ERISA's "'comprehensive legislative scheme'" and "'integrated system of procedures for enforcement,'"[16] the Court stated that ERISA's enforcement provision, § 502(a), was "essential to accomplish[ing] Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans."[17]  As ERISA § 502(a)(1)(B) already provided a cause of action for a plan participant to recover wrongfully denied benefits,[18] the alleged injuries covered by the Texas statute were duplicative and, thus, preempted.[19]

---

[15]542 U.S. 200, 209; *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54-56 (1987); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143-45 (1990).

[16]*Davila*, 542 U.S. at 208 (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) (internal quotation marks and citation omitted)).

[17]*Davila*, 542 U.S. at 208; 29 U.S.C. § 1132(a).

[18]ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought--(1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.").

[19]*Davila*, 542 U.S. at 214.  At the district court, Blue Cross also relied on the Third Circuit's decision in *Barber v. UNUM Life Insurance Co. Of Am.*, which considered a Pennsylvania statute providing punitive damages for the bad faith denial of insurance claims.  383 F.3d 134, 136 (3d Cir. 2004).  That court, relying on *Davila*, concluded that the statute created a conflict with ERISA's exclusive enforcement scheme.  *Id.* at 141.  For the same reasons *Davila* is not controlling, *Barber* is not persuasive.  *See also Cicio v. John Does 1-8*, 385 F.3d 156 (2d Cir. 2004) (finding a state law malpractice claim preempted by ERISA because it would provide consequential and punitive damages in connection with a benefits claim); *Land v. CIGNA Healthcare of Fla.*, 381 F.3d 1274 (11th Cir. 2004) (state law medical malpractice claim preempted).

Blue Cross contends that *Davila* is controlling because the assignment statute provides a "separate vehicle" for asserting benefits claims, creating a remedy that "duplicates, supplements, or supplants" ERISA's exclusive enforcement scheme.  According to Blue Cross, the assignment statute gives hospitals, to which benefits have been assigned in contravention of the plan's express terms, a state-law cause of action against the ERISA plan to collect the assigned benefits.  Further, Blue Cross contends the statute creates a supplemental remedy, as it provides that any payment to the participant, in accordance with plan terms, does not release the plan from liability to the hospital.  To Blue Cross, the statute authorizes double recovery against the ERISA plan.

Louisiana's assignment statute is readily distinguishable from the Texas law providing a negligence cause of action for the denial of benefits.  First, unlike the enforcement provisions at issue in *Davila*, ERISA is silent on the assignability of employee welfare benefits; it neither prohibits assignments nor mandates recognition of assignments.[20]  The Texas statute at issue in *Davila* was preempted, in large part, because of the specific enforcement

---

[20]*Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988) ("*Hermann I*") ("ERISA contains no anti-assignment provision with regard to health care benefits of ERISA-governed medical plans, nor is there any language in the statute which even remotely suggests that such assignments are proscribed or ought in any way to be limited."); *cf*. ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1) (providing, with certain exceptions, that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated").

provisions provided by Congress.[21]  Second, the assignment statute

does not create an additional means to enforce payment of benefits

under an ERISA plan.  The Texas statute at issue in *Davila*, in

contrast, imposed a "duty" on any health maintenance organization

"to exercise ordinary care when making health care treatment

decisions" and imposed liability for any damages proximately caused

by a failure to exercise ordinary care.[22]  The assignment of

benefits from the patient to the hospital results solely in the

transfer of the cause of action provided by § 502(a) from the

patient to the hospital.  The assignee takes what the assignor had;

no more, no less.[23]  The assignment statute merely passes the sole

---

[21]*Davila*, 542 U.S. at 208-09.  As the Court noted in *Pilot Life*,

> [T]he detailed provisions of § 502(a) set forth a comprehensive
> civil enforcement scheme that represents a careful balancing of the
> need for prompt and fair claims settlement procedures against the
> public interest in encouraging the formation of employee benefit
> plans.  The policy choices reflected in the inclusion of certain
> remedies and the exclusion of others under the federal scheme would
> be completely undermined if ERISA-plan participants and
> beneficiaries were free to obtain remedies under state law that
> Congress rejected in ERISA.

*Pilot Life Ins.*, 481 U.S. at 54; *see also Russell*, 473 U.S. at 146 ("The six carefully integrated civil enforcement provisions found in § 502(a) . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.").

[22]*See* TEX. CIV. PRAC. & REM. CODE ANN. § 88.002(a) (Vernon 2004) ("A health insurance carrier, health maintenance organization, or other managed care entity for a health care plan has the duty to exercise ordinary care when making health care treatment decisions and is liable for damages for harm to an insured or enrollee proximately caused by its failure to exercise ordinary care.").  After *Davila*, the Texas legislature clarified that § 88.002(a) did not apply to employee benefit plans regulated by ERISA.  *See id.* § 88.015.

[23]*Tango Transport v. Healthcare Fin. Servs.*, 322 F.3d 888, 894 (5th Cir. 2003); *Hermann Hosp. v. MEBA Med. and Benefits Plan*, 959 F.2d 569, 572 (5th Cir. 1992) ("*Hermann II*").

-11-

enforcement mechanism--ERISA § 502--from patient to hospital; it does not impose any additional obligation on the ERISA plan administrator, nor does it create additional or separate means of enforcement.[24]

In addition, Blue Cross argues that the assignment statute authorizes a "double recovery" of employee welfare benefits. According to Blue Cross, it must pay benefits to a patient, in conformance with the express terms of the plan, but that such payment will not discharge liability to a provider that has been assigned the patient's benefits claim. This argument is similarly without merit. Blue Cross's obligation to pay the provider only arises if Blue Cross has notice of the assignment.[25] If Blue Cross complies with the assignment, then it only pays one time; if Blue Cross ignores the assignment, then it risks paying a claim twice. Failure to follow the law cannot create preemption concerns. Should Blue Cross pay a patient after receiving notice that the patient assigned her benefits claim to a hospital, Blue Cross can seek recovery from the person improperly paid (here, the patient),[26] and Blue Cross recognizes the availability of this remedy in its plan terms, as it reserves the right to recover improper payments.

---

[24]See *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002) (recognizing that "a state regulatory scheme that provides no new cause of action under state law and authorizes no new form of ultimate relief" is not preempted).

[25]See LA. REV. STAT. ANN. § 40:2010.

[26]See *Bombardier Aerospace Emp. Wel. Benef. Plan v. Ferrer, Poirot and Wansbrough*, 354 F.3d 348, 356-58 (5th Cir. 2003).

We conclude that Louisiana's assignment statute is not in conflict with the exclusive enforcement mechanism provided by ERISA. We now turn to Blue Cross's contention that the statute is preempted as a law that "relate[s] to" employee benefit plans.

2

Congress expressly provides that ERISA "shall supersede any and all State laws insofar as they now or hereafter relate to" any employee benefit plan.[27] Our task is to determine whether the assignment statute "relate[s] to" employee benefit plans. The "unhelpful text" of ERISA's preemption provision neither directs, nor informs, our inquiry;[28] rather, we gain insight solely from the Supreme Court's application of the provision to particular state statutes.

The Supreme Court directs that a law "relates to" an employee benefit plan if "it has a connection with or reference to such a plan."[29] A state law "refers" to an ERISA plan if it acts "immediately and exclusively upon ERISA plans"[30] or if "the

---

[27]ERISA § 514(a), 29 U.S.C. § 1144(a).

[28]*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995).

[29]*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).

[30]*Cal. Div. of Labor Enforcement v. Dillingham Constr.*, 519 U.S. 316, 324-25 (1997) (referencing *Mackey v. Lanier Collection Agency & Svc., Inc.*, 486 U.S. 825, 828-30 (1988), in which the Court held that ERISA preempted a state statute that expressly prohibited garnishment of employee welfare plan benefits).

existence of an ERISA plan is essential to the law's operation."[31]
A law does not refer to an ERISA plan if it applies neutrally to
ERISA plans and other types of plans.[32] The "reference to" prong
is inapplicable here, as the assignment statute operates without
regard to the existence of ERISA plans and does not immediately and
exclusively act on such plans: it applies to insurance companies,
employee benefit trusts, self-insurance plans, and other entities
that are obligated to reimburse individuals for the charges
incurred for hospital services.[33] Thus, the assignment statute is
preempted only if it has a "connection with" ERISA plans.

We discern no precise formula for calculating whether a state
law has an impermissible connection with an employee benefit plan.
The Supreme Court broadly instructs us to look at the objectives of
ERISA and the nature and effect of the state law on ERISA plans.[34]
In cases like this one, in which Blue Cross contends that federal

---

[31]*Dillingham*, 519 U.S. at 324-25 (referencing *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 (1992), in which the Court held that ERISA preempted a state statute that applied only to employers who provided health insurance coverage, and *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990), in which the Court held that ERISA preempted a common-law cause of action premised on the existence of an ERISA plan).

[32]*Dillingham*, 519 U.S. at 325-28 (refusing to hold that a state statute pertaining to approved apprenticeship programs "referred to" ERISA plans because not all such programs were ERISA plans); *see also Corporation Health Ins. v. Tx. Dep't of Ins.*, 215 F.3d 526, 535 (5th Cir. 2000), *op. modified*, 314 F.3d 784 (5th Cir. 2002).

[33]*See* LA. REV. STAT. ANN. § 40:2010; *cf. Mackey*, 486 U.S. at 829 (holding that a Georgia garnishment statute that solely applied to ERISA employee benefit plans was preempted).

[34]*Dillingham*, 519 U.S. at 325 (quoting *Travelers*, 514 U.S. at 656).

-14-

law bars state action in a field of traditional state regulation,[35] we start with the assumption that "the historic police powers of the States were not to be superseded by [ERISA] unless that was the clear and manifest purpose of Congress."[36]  Preemption will not occur if a state law has only a "tenuous, remote, or peripheral" connection with covered employee benefit plans.[37]

Both parties agree that ERISA is silent on the assignability of employee welfare benefits.  As is often the case, congressional silence whispers sweet nothings in the ears of both parties.  Blue Cross contends that silence implies that Congress intended to leave the assignment of employee welfare benefits to the free negotiations of the contracting parties; the Hospitals, in contrast, contend that silence speaks and it says that Congress did not intend to preclude statutes mandating enforcement of assignments, especially when considered in light of the express prohibition on the assignment of pension benefits.[38]  Congressional

---

[35]*See, e.g.*, *DeBuono v. NYSA-ILA Med. & Clinical Svcs.*, 520 U.S. 806, 814 (1997) (noting that "the historic police powers of the State include the regulation of matters of health and safety" (citing *Hillsborough County v. Automated Med. Laboratories, Inc.*, 471 U.S. 707, 715 (1985)).

[36]*Travelers*, 514 U.S. at 655; *Dillingham*, 519 U.S. at 325; *Rice*, 331 U.S. at 230.

[37]*Greater Wash. Bd. of Trade*, 506 U.S. at 130.

[38]*See* ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1); *cf. Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 829 (1988) (concluding that a general state garnishment statute's application to employee welfare benefits was not preempted by ERISA because ERISA was silent about enforcement mechanisms for money judgments whereas ERISA explicitly prohibited assignment of pension benefits).

-15-

silence cannot dictate our conclusion in this case, but we consider what Congress did in order to determine what Congress intended to preclude the states from doing.

Likewise, both parties direct our attention to our prior precedent concerning assignment of benefits. We have held that an assignee has derivative standing to enforce claims under ERISA § 502, thus permitting assignments when not precluded by the plan terms.[39] We have also held that, absent a statute to the contrary, an anti-assignment provision in a plan is permissible under ERISA.[40] None of this resolves the question in this case——namely, whether Louisiana's assignment statute is preempted under ERISA § 514 as a state law that "relate[s] to" employee welfare benefits.

Blue Cross relies primarily on the Supreme Court's decision in *Egelhoff v. Egelhoff*,[41] which concerned a Washington statute that revoked by operation of law the designation of a spouse as the beneficiary of all nonprobate assets, including ERISA plan

---

[39]*See Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289 & n.13 (5th Cir. 1988).

[40]*See LeTourneau Lifelike Orthotics & Prosthetics, Inc.*, 298 F.3d 348, 352 (5th Cir. 2002) (holding that anti-assignment provisions are not *per se* invalid as applied to health care providers); *see also Physicians Multispecialty Group v. The Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295-96 (11th Cir. 2004); *City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 229 (1st Cir. 1998); *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1480-81 (9th Cir. 1991).

[41]532 U.S. 141 (2001).

benefits, upon dissolution of marriage.[42]  The Court found fault

with two aspects of the Washington statute.  First, the statute

bound ERISA plan administrators "to a particular choice of rules

for determining beneficiary status."[43]  To the Court, the statute

forced administrators to pay benefits to beneficiaries chosen by

state law, rather than those specified in the plan documents.  This

conflicted with ERISA's requirements that fiduciaries administer

plans "in accordance with the documents and instruments governing

the plan"[44] and that fiduciaries make payments to beneficiaries

"designated by a participant or by the terms of [the] plan."[45]

Second, the Court found the Washington statute interfered with

one of the "primary" goals of ERISA: establishing a uniform

administrative scheme with a set of standard procedures to guide

processing of claims and disbursement of benefits.[46]  The existence

of the Washington statute required plan administrators to look

beyond the plan documents to the effects of state law before making

payments to beneficiaries.  Exacerbated by various choice-of-law

problems, the statute's burden on plan administrators was not

---

[42]*See* WASH. REV. CODE § 11.07.010(2)(a) (1994) ("If a marriage is dissolved or invalidated, a provision made prior to that event that relates to the payment or transfer at death of the decedent's interest in a nonprobate asset in favor of or granting an interest or power to the decedent's former spouse is revoked.").

[43]*Egelhoff*, 532 U.S. at 147.

[44]*Id.* (citing ERISA § 402(b)(4), 29 U.S.C. § 1102(b)(4)).

[45]*Id.* (citing ERISA § 3(8), 29 U.S.C. § 1002(8)).

[46]*Id.; Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987).

militated by provisions protecting administrators from liability unless they had actual knowledge of the dissolution of marriage and permitting administrators to refuse payment until resolving who was a proper beneficiary.[47]

Blue Cross finds both faults in the assignment statute. First, Blue Cross contends *Egelhoff* is controlling because Louisiana's assignment statute binds ERISA plans to a set of rules that govern to whom benefits must be paid in contravention of the plan documents. We disagree. The Washington statute operated as a matter of law, invalidating a plan's designation of beneficiary upon dissolution of marriage. Louisiana's assignment statute, in contrast, requires an affirmative act by the plan participant; it enforces the free will of the plan participant, which is consistent with ERISA's choice of beneficiary. As recognized by the Court in *Egelhoff*, ERISA directs that administrators must pay beneficiaries who are "designated by a participant or by the terms of [the] plan."[48] The Washington statute imposed a third alternative, requiring payment to beneficiaries designated "by operation of law." Louisiana's assignment statute, in contrast, is consistent with the express terms of ERISA--leaving the beneficiary determination to *either* the person designated by the participant or the person designated by the plan.

---

[47]*Egelhoff*, 532 U.S. at 148-50.

[48]*Id.* at 147 (citing ERISA § 3(8), 29 U.S.C. § 1002(8)).

We also disagree with Blue Cross's contention that application of the assignment statute will impermissibly interfere with nationally uniform plan administration. To be sure, ERISA was enacted, in large measure, "to establish a uniform administrative scheme" with "a set of standard procedures to guide processing claims and disbursement of benefits."[49] However, a statute's impact on nationally uniform plan administration must be evaluated in light of the particular burden the statute imposes on plan administration. The greater the impact, the greater the burden. As the Court recognized in *Egelhoff*, "all state laws create some potential for lack of uniformity."[50]

Here, the burden on plan administrators is minimal, especially given that Louisiana requires all insurance claims to be submitted on a uniform claim form that includes space for indicating whether benefits have been assigned.[51] Further, the assignment statute will not create any additional paperwork for Blue Cross and, in fact, it may lessen Blue Cross's administrative responsibilities. With or without assignment, Blue Cross will pay benefits only one time, and

---

[49]*Fort Halifax Packing Co.*, 482 U.S. at 9; *see also Davila*, 542 U.S. at 208 ("The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans."); *Ingersoll-Rand*, 498 U.S. at 142-45; *Metropolitan Life Ins. Co. V. Taylor*, 481 U.S. 58, 64-66 (1987).

[50]*Egelhoff*, 532 U.S. at 150; *see also Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 365 (recognizing that "it was beyond dispute" that a state statute that required all insured benefit plans "to submit to an extra layer of review for certain benefit denials" had a substantial effect on ERISA plans).

[51]*See* LA. REV. STAT. ANN. § 22:213(A)(14) ("Notwithstanding any other law to the contrary, including Paragraph (4) of this Subsection, all claims shall be processed in conformity with the uniform claim form issued by the [DOI].").

payment is triggered upon submission of a claim form. To Blue Cross, it should not matter whether that claim form comes from the plan participant, as provided in the plan documents, or from the hospital, as assignee of the participant's benefits claim. Further, as pointed out by amicus curiae, most hospitals file claims with insurance companies electronically, which mitigates the administrative burden. The burden seems greater when many individuals plan participants must each individually file claims with Blue Cross, especially given the intricacies of coverages, deductibles, and retentions of most health care plans. By consolidating many different individual claims, hospitals can channel expertise in the benefits process. Tellingly, Blue Cross concedes that it must honor assignments made under non-ERISA plans, which suggests that it already has in place some administrative mechanism for complying with the statute. Taken together, the burden imposed by the assignment statute, especially given its consistency with ERISA § 3(8), is minimal, militating concerns over the statute's effect on nationally uniform plan administration.

We acknowledge that both the Eighth and Tenth Circuits have concluded that ERISA preempts similar assignment statutes.[52] After review of those decisions, as well as intervening Supreme Court

---

[52]*See Ar. Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.*, 947 F.2d 1341 (8th Cir. 1991); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Ks., Inc.*, 49 F.3d 1460 (10th Cir. 1995).

precedent, we are convinced that Louisiana's assignment statute does not have the impermissible connection with ERISA plans.

Both the Eighth and Tenth Circuits interpreted ERISA's silence on the assignability of benefits claims as leaving the issue to the free negotiation and agreement of the parties.[53] As we have already noted, congressional silence points in both directions: either leaving assignment of employee welfare benefits to the parties or leaving room for state regulation, should a state desire to intervene. In *Mackey v. Lanier Collection Agency & Service*, the Supreme Court interpreted congressional silence as to the garnishment of employee welfare benefits not to preempt application of a general garnishment statute to employee welfare benefits, especially in light of an express prohibition on the garnishment of employee pension benefits.[54] Likewise, ERISA specifically precludes assignment of pension plan benefits.[55] As such, "there is no ignoring the fact that, when Congress was adopting ERISA, it had before it a provision to bar the [assignment of ERISA plan benefits], and chose to impose that limitation only with respect to

---

[53]*St. Mary's Hosp.*, 947 F.2d at 1349 ("[I]f Congress intended that ERISA participants could negotiate plan provisions governing the right to assign welfare benefits, it is more likely that Congress would say nothing at all about welfare benefit assignment."); *St. Francis*, 49 F.3d at 1464 ("We interpret ERISA as leaving the assignability of benefits to the free negotiations and agreement of the contracting parties.").

[54]486 U.S. 825, 836.

[55]ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1).

ERISA pension benefit plans, and *not* ERISA welfare benefit plans."[56]

Moreover, both the Eighth and Tenth Circuits decided the preemption question prior to the Supreme Court's rejection, starting in *Travelers*, of an "uncritical literalism" in the application of ERISA's "unhelpful text."[57]  As we have previously noted, the Supreme Court has returned "to a traditional analysis of preemption, asking if a state regulation frustrated the federal interest in uniformity."[58]  Neither the Eighth nor Tenth Circuits operated with the starting assumption that Congress did not intended to preempt state law in an area of traditional state regulation.[59]

Finally, both parties offer differing accounts of what is "best" in the public's interest.  The Hospitals, with support from the State of Louisiana and amicus curiae AARP and the Louisiana Hospital Association, argue that the assignment statute facilitates

---

[56]*Mackey*, 486 U.S. at 837.

[57]514 U.S. 645, 656 (1995); *see also Cal. Div. Of Labor Enforcement v. Dillingham Constr.*, 519 U.S. 316 (1997); *DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806 (1997); *Boggs v. Boggs*, 520 U.S. 833 (1997) (applying traditional preemption analysis in concluding state testamentary laws were preempted as applied to an ERISA pension fund).

[58]*Corp. Health Ins., Inc. v. Tx. Dep't of Ins.*, 215 F.3d 526, 533 (5th Cir. 2000), *op. mod. and reinstated*, 314 F.3d 784 (5th Cir. 2002).  This view is in accord with that of other circuits.  *See Wright Elec. v. Mn. State Bd. of Elec.*, 322 F.3d 1025, 1029 (8th Cir. 2003) (collecting cases).

[59]*St. Mary's Hosp.*, 947 F.2d at 1350 ("We reject St. Mary's argument that preemption is not appropriate because the assignment statute is an exercise of traditional state power. . . .  Although the Supreme Court has not discussed the relevance of this factor, its failure to consider this criterion when deciding ERISA preemption cases is telling." (citing *FMC Corp. v. Holliday*, 498 U.S. 52 (1990), and *Mackey*, 486 U.S. 825 (1988)); *St. Francis*, 49 F.3d at 1464 (relying largely on the Eighth Circuit's decision in *St. Mary's Hospital*).

delivery of medical treatment to patients, especially low-income patients. To Blue Cross, the assignment statute deprives Blue Cross of a significant carrot—the availability of direct payments. Although recognizing that consumers benefit when Blue Cross pays hospitals directly, Blue Cross uses the availability of direct payments as an important incentive for hospitals to join its provider networks, which requires reduced rates for medical care.

Neither policy choice is absurd, but the preemption inquiry is not resolved by or concerned with arguments of policy. We operate between two conflicting principles: On the one hand, Congress passed ERISA, a comprehensive statute with a "clearly expansive" preemption provision.[60] On the other hand, the Supreme Court requires our analysis to start with the assumption that ERISA was not intended to derogate the historic police powers of the states.[61] The second assumption does not eliminate the first, but we walk a fine line between permissible and impermissible state regulation in this context. As we conclude that Louisiana's assignment statute is not preempted by ERISA, we leave the public policy decision to Louisiana's legislative body. They have chosen assignment of benefit claims over inducing hospitals to enter into Blue Cross's

---

[60]*See Cal. Div. Of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 324 (1997) (collecting various descriptions of ERISA's preemption provision).

[61]*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654-55 (1995).

provider networks.  Nothing in ERISA requires us to alter that choice.

*C*

As we conclude that Louisiana's assignment statute is not preempted by ERISA, we need not consider whether the statute is saved from preemption as a law regulating insurance.[62]

**III**

Accordingly, the district court's judgment is AFFIRMED.

---

[62]ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A) ("Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates, insurance, banking, or securities.").

OWEN, Circuit Judge, concurring:

I concur in the judgment.  We need not resolve whether section 40:2010 of the Louisiana Revised Statutes "relates to" an employee benefit plan within the meaning of 29 U.S.C. § 1144(a)[1] and the Supreme Court's decisions interpreting and applying that provision. Section 40:2010 is saved from preemption under 29 U.S.C. § 1144(b)(2)(A) as a law that "regulates insurance."[2]  Section 40:2010's application to the ERISA benefit plans at issue is accordingly not preempted.

**I**

Louisiana Health Service & Indemnity Co., doing business as Blue Cross and Blue Shield of Louisiana, insures and administers employee benefit plans that are subject to ERISA.  In providing and administering health care benefits, Blue Cross has contracted with hospitals, physicians and others, whom it calls Participating Providers, and agreed to provide direct payment for services

---

[1]That section states:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.  This section shall take effect on January 1, 1975.

29 U.S.C. § 1144(a).

[2]*Id.* § 1144(b)(2)(A) ("Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.").

rendered to plan beneficiaries.  If a plan beneficiary obtains the services of a non-Participating Provider, Blue Cross will reimburse the plan beneficiary but will not make direct payment to the non-Participating Provider.  The terms of the ERISA plans that Blue Cross insures or administers are congruent with Blue Cross's method of doing business and provide that assignments by a plan beneficiary to providers other than Participating Providers will not be honored.

I agree with the panel majority that the ERISA plans Blue Cross insures or administers contravene section 40:2010 of the Louisiana Revised Statutes.  Section 40:2010 requires insurers to pay benefits directly to a hospital when the insurer has notice that a beneficiary has assigned benefits to that hospital.  Section 40:2010 provides:

> Not later than ten business days after the date of discharge, each hospital in the state which is licensed by the Department of Health and Hospitals shall have available an itemized statement of billed services for individuals who have received the services from the hospital.  The availability of the statement shall be made known to each individual who receives service from the hospital before the individual is discharged from the hospital, and a duplicate copy of the billed services statement shall be presented to each patient within the specified ten day period.  No insurance company, employee benefit trust, self-insurance plan, or other entity which is obligated to reimburse the individual or to pay for him or on his behalf the charges for the services rendered by the hospital shall pay those benefits to the individual when the itemized statement submitted to such entity clearly indicates that the individual's rights to those benefits have been assigned to the hospital.  When any insurance company, employee benefit trust, self-insurance plan, or other entity has notice of such assignment prior to such payment, any payment to the insured shall not release said entity from liability to the hospital to which the benefits have been

assigned, nor shall such payment be a defense to any action by the hospital against that entity to collect the assigned benefits. However, an interim statement shall be provided when requested by the patient or his authorized agent.[3]

Assuming, *arguendo*, that Blue Cross is correct in contending that the directives in this statute regarding assignments of benefits "relate to" an ERISA employee benefit plan, the Louisiana statute is saved from preemption by the saving clause in 29 U.S.C. § 1144(b)(2)(A). That clause says: "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."[4] The Supreme Court has held that through this saving clause, state laws may indirectly regulate employee benefit plans that are insured.[5] The Court has explained, "an insurance company that insures a plan remains an

---

[3]LA. REV. STAT. ANN. § 40:2010 (2001).

[4]29 U.S.C. § 1144(b)(2)(A). Subparagraph B, referenced in this subsection, is the so-called "deemer clause" and provides:

> Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

*Id.* § 1144(b)(2)(B).

[5]*See FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) (holding "employee benefit plans that are insured are subject to indirect state insurance regulation"); *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747 (1985) (recognizing "a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not").

insurer for purposes of state laws 'purporting to regulate insurance,'" and an "ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer."[6] Accordingly, even though the insured employee benefit plans Blue Cross insures or administers[7] may provide that assignments will not be honored, those provisions must give way to state law to the extent ERISA's insurance saving clause applies.[8] It is unnecessary to resolve whether the "deemer" clause, contained in 29 U.S.C. § 1144(b)(2)(B), precludes the application of the ERISA saving clause to self-funded ERISA benefit plans that Blue Cross might administer but not insure because the State of Louisiana concedes that it has not attempted to enforce section 40:2010 with regard to self-funded ERISA plans and Blue Cross does not contend that it administers any self-funded plans to which the State of Louisiana has sought to apply section 40:2010.[9]

---

[6]*FMC Corp.*, 498 U.S. at 61 (quoting 29 U.S.C. § 1144(b)(2)(B)).

[7]*See Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 336 n.1 (2003) (stating that administration by noninsuring HMO's of even a self-insured plan "suffices to bring them within the activity of insurance for purposes of § 1144(b)(2)(A)").

[8]*See Unum Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 375-76 (1999) (rejecting the argument that an ERISA plan's terms always control, observing "insurers could displace any state regulation simply by inserting a contrary term in plan documents" which "would virtually 'rea[d] the saving clause out of ERISA'" (quoting *Metro. Life*, 471 U.S. at 741)).

[9]*See generally Ky. Ass'n*, 538 U.S. at 336 n.1 (discussing the "deemer clause" and the reach of the saving clause when an insurance company or HMO acts only as an administrator of a self-insured ERISA plan); *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 372 n.6 (2002) (discussing the possibility that an HMO may provide only administrative services for a self-funded plan and stating that a state law "would not be 'saved' as an insurance law to the extent it applied to self-funded plans").

Blue Cross does contend, though, that LA. REV. STAT. ANN. § 40:2010 does not "regulate[] insurance" within the meaning of ERISA's insurance saving clause. The Supreme Court's decision in *Kentucky Association of Health Plans, Inc. v. Miller*[10] provides considerable guidance in resolving this question. The Court announced it was "mak[ing] a clean break from the [three] McCarran-Ferguson factors" it had referenced in prior opinions and held "that for a state law to be deemed a 'law . . . which regulates insurance' under § 1144(b)(2)A), it must satisfy two requirements."[11] Those are 1) "the state law must be specifically directed toward entities engaged in insurance" and 2) "the state law must substantially affect the risk pooling arrangement between the insurer and the insured."[12]

With regard to the first requirement, *Kentucky Association* explained that "laws of general application that have some bearing on insurers do not qualify" as a state law "'specifically directed toward' the insurance industry,"[13] and "not all state laws 'specifically directed toward' the insurance industry will be

---

[10]538 U.S. 329 (2003).

[11]*Id*. at 341-42.

[12]*Id*. at 342.

[13]*Id*. at 334 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50 (1987)).

covered by § 1144(b)(2)(A)."[14]  "[I]nsurers must be regulated 'with respect to their insurance practices.'"[15]

At issue in *Kentucky Association* was a state statute that prohibited health insurers from discriminating against any provider located within the geographic coverage area of a health benefit plan and willing to meet the terms and conditions for participation established by that insurer and a corollary statute that directed that any chiropractor who agreed to the terms, conditions and rates of a health care benefit plan must be permitted to serve as a participating primary chiropractic provider.[16]  The Supreme Court held that the ERISA saving clause saved these "any-willing-provider" statutes from preemption.  The Court reasoned that the statutes "'regulate[d]' insurance by imposing conditions on the right to engage in the business of insurance."[17]

With regard to the second requirement for application of the insurance saving clause, the Court concluded that the statutes at issue in *Kentucky Association* "substantially affect[ed] the risk pooling arrangement between [the] insurer and [the] insured" because "[b]y expanding the number of providers from whom an insured may receive health services, [any-willing-provider] laws

---

[14]*Id*.

[15]*Id*. (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 366 (2002)).

[16]*Id*. at 331–32.

[17]*Id*. at 338.

alter the scope of permissible bargains between insurers and insureds."[18]   The Court likened the any-willing-provider laws' impact to that of "mandated-benefit laws [it] upheld in *Metropolitan Life*, the notice-prejudice rule [it] sustained in *Unum*, and the independent-review provisions [it] approved in *Rush Prudential*."[19]

The Louisiana statute before us is directed toward entities that engage in insurance-"[any] insurance company, employee benefit trust, self-insurance plan, or other entity which is obligated to reimburse the individual or to pay for him or on his behalf the charges for the services rendered by the hospital."[20]   The statute's inclusion of "self-insured plans" does not preclude it from qualifying as a law that "regulates insurance."[21]   Even benefit plans that are self-funded "engage in the same sort of risk pooling arrangements as separate entities that provide insurance to an employee benefit plan," and in the absence of § 1144(b)(2)(B) (the "deemer clause"), self-funded plans could be regulated by states under the insurance saving clause.[22]   The Supreme Court has said,

---

[18]*Id*. at 338-39.

[19]*Id*. at 339 (referring to *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985), *Unum Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999), and *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002)).

[20]LA. REV. STAT. ANN. § 40:2010.

[21]*See Ky. Ass'n*, 538 U.S. at 336 n.1 (discussing the interplay between the insurance saving clause in 29 U.S.C. § 1144(b)(2)(A) and the deemer clause in 29 U.S.C. § 1144(b)(2)(B)).

[22]*Id.*

"We do not think [a state law's] application to self-insured non-ERISA plans forfeits its status as a 'law . . . which regulates insurance' under 29 U.S.C. § 1144(b)(2)(A)."[23]  Likewise, nothing in the text of LA. REV. STAT. ANN. § 40:2010 regarding assignments indicates that the term "other entity which is obligated to reimburse the individual or to pay for him or on his behalf the charges for the services rendered" means anything other than an entity that is engaging is some sort of risk pool arrangement to provide benefits.

The fact that the Louisiana law requiring insurers to honor assignments of benefits to hospitals appears in a statute that also requires hospitals to provide an itemized bill to patients within ten days is of no moment.  The provisions that are directed at insurance companies are not directed at hospitals, and mere inclusion of those provisions with other separable regulations does not preclude the provisions aimed at insurers from qualifying as laws "regulat[ing] insurance" under ERISA's insurance saving clause.  Nor is it of any significance that section 40:2010 is not within Louisiana's insurance code.  The State of Louisiana has, through section 40:2010, directly regulated insurance by imposing

---

[23]*Id.; see also Rush Prudential*, 536 U.S. at 372 (observing that because the "deemer clause" provides an exception to the saving clause, a state law would not be saved under 29 U.S.C. § 1144(2)(b)(A) to the extent is applied to self-funded plans, but nevertheless, "there is no reason to think Congress would have meant such minimal application to noninsurers to remove a state law entirely from the category of insurance regulation").

conditions on the right to engage in the business of insurance in that State.[24]

The Louisiana statute before us satisfies the second requirement identified in *Kentucky Association* as well. Section 40:2010 substantially affects the risk pooling arrangement between the insurer and the insured in much the same way as the state law at issue in *Kentucky Association*. With regard to the any-willing-provider statutes at issue in *Kentucky Association*, the Supreme Court held that those statutes altered the scope of permissible bargains between insurers and insured and observed that Kentucky insureds could "[n]o longer . . . seek insurance from a closed network of health-care providers in exchange for a lower premium."[25] Section 40:2010 similarly alters the scope of permissible bargains between insurers and insureds by prohibiting anti-assignment agreements. There is evidence in the record before us that some Louisiana hospitals who were not Participating Providers refused to accept Blue Cross beneficiaries as patients because Blue Cross would not honor patients' assignments of benefits, and Blue Cross would not pay non-Participating Providers directly. Section 40:2010 expands insureds' access to hospitals by removing this

---

[24]*See Ky. Ass'n*, 538 U.S. at 337-38 (concluding that the any-willing-provider statute at issue regulated insurance and likening the statute to a state law requiring all licensed attorneys to participate in ten hours of continuing legal education, which, the Court said, would be a statute regulating the practice of law).

[25]*Id*. at 339.

obstacle to treatment. Blue Cross must treat all hospitals equally with regard to assignments of benefits. Section 40:2010 also has the effect of requiring insurers like Blue Cross to make allowance for instances in which they erroneously pay a beneficiary directly because payment to the beneficiary is not a defense to the insurer's obligation to pay the provider.[26] Although Blue Cross might seek to recover an erroneous payment from a beneficiary, some beneficiaries will not have the means, or will refuse, to repay. The unrecoverable costs associated with pursuing beneficiaries paid in error must additionally be taken into account. These considerations have the effect of increasing premiums and spreading the risk of erroneous payments among policyholders.

Section 40:2010 of the Louisiana Revised Statutes is also similar to the statute at issue in *FMC Corp. v. Holliday*, which prohibited insurers from exercising subrogation rights against an insured's tort recovery.[27] The Supreme Court concluded that the anti-subrogation statute would be saved from preemption to the extent that it applied to insured ERISA employee benefit plans, but the statute was preempted to the extent it applied to self-insured plans.[28]

---

[26]*See* LA. REV. STAT. ANN. § 40:2010 (2001).

[27]498 U.S. 52, 55 n.1 (1990).

[28]*Id*. at 61 (holding that the state statute "returns the matter of subrogation to state law . . . [u]nless the statute is excluded from the reach of the saving clause by virtue of the deemer clause").

-34-

I would hold that ERISA's insurance saving clause applies to LA. REV. STAT. ANN. § 40:2010. The only remaining question is whether section 40:2010 conflicts with ERISA's civil enforcement scheme.

**II**

Blue Cross contends that section 40:2010 creates a remedy in addition to those set forth in ERISA. That remedy, Blue Cross contends, is the right to obtain a "double payment" in instances in which Blue Cross has notice of an assignment and pays the beneficiary instead of the hospital to whom the benefits have been assigned. The Supreme Court held in *Aetna Health Inc. v. Davila* that "even a state law that can arguably be characterized as 'regulating insurance' will be preempted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme."[29]

ERISA's remedial scheme is set forth in 29 U.S.C. § 1132. That section authorizes a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[30] This section

---

[29]542 U.S. 200, 217-18 (2004).

[30]29 U.S.C. § 1132(a)(1)(B).

-35-

"clearly contemplates" that a money judgment may be obtained against benefit plans.[31]

Nothing in ERISA prevents a participant or beneficiary from assigning his or her rights to welfare benefits, which include health care benefits. Notably, ERISA affirmatively prohibits assignment of pension benefits.[32] This distinction led the Supreme Court to conclude that "Congress' decision to remain silent concerning the attachment or garnishment of ERISA welfare plan benefits 'acknowledged and accepted the practice, rather than prohibiting it.'"[33] This Circuit has held that assignees of welfare plan benefits have standing to enforce plan benefits under ERISA.[34]

An assignment of a plan beneficiary's right to receive welfare benefits does nothing more than transfer the right to be paid to the assignee. It does not create new rights outside of ERISA. Blue Cross argues that barring payment to a beneficiary as a defense and requiring payment to an assignee even if payment has been made to the beneficiary creates a new right outside of ERISA's

---

[31]*Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 832-33 & n.7 (1988).

[32]29 U.S.C. § 1056(d)(1) ("Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."); *see also Mackey*, 486 U.S. at 836 (discussing anti-alienation provisions in 29 U.S.C. § 1056(d)(1) and stating, "Congress did not enact any similar provision applicable to ERISA *welfare* benefit plans").

[33]*Mackey*, 486 U.S. at 837-38 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 516 (1981)).

[34]*Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 892 (5th Cir. 2003); *see also Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289-90 (5th Cir. 1988).

remedial scheme.  This contention has no merit.  Suppose a plan administrator paid benefits to a former spouse rather than the current spouse of a participant.  That mistake would not relieve the plan administrator of its obligation to pay the correct person.  The Louisiana statute does not enlarge the rights, causes of action, or remedies of beneficiaries or their assignees.  Section 40:2010 simply directs to whom payment must be made once there has been a valid assignment and the plan has received notice of that assignment.

* * * * *

For the foregoing reasons, I concur in the judgment.