# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 23, 2010

No. 09-20188

Lyle W. Cayce
Clerk

QUALITY INFUSION CARE, INC.,

Plaintiff–Appellant

v.

HEALTH CARE SERVICE CORPORATION, doing business as Blue Cross
and Blue Shield of Texas,

Defendant–Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, PRADO, Circuit Judge, and OZERDEN, District
Judge.[*]

EDWARD C. PRADO, Circuit Judge:

This case presents a narrow legal dispute between a healthcare provider,
Quality Infusion Care, Inc. ("QIC"), and an insurance company, Healthcare
Service Corp., d/b/a Blue Cross and Blue Shield of Texas ("BCBS"). BCBS
overpaid QIC for certain patient claims and then set off the overpayments by
underpaying subsequent patient claims, without regard to whether the
subsequent claim was from the same patient or under the same insurance plan.

---

[*] District Judge of the Southern District of Mississippi, sitting by designation.

QIC argues that BCBS's setoffs were improper because BCBS did not have a contractual or statutory right to set off overpayments against different patients' claims and because the debts that were offset were not mutual and in the same capacity.  BCBS responds that the setoffs comport with all relevant precedent, and that the setoffs satisfy its rights under the insurance contracts and Texas Insurance Code. The district court granted summary judgment to BCBS, finding that the setoffs comported with the language of the Plans and the Insurance Code.

We AFFIRM the district court's take-nothing judgment because BCBS had a contractual right under all three plans to privately deduct overpayments it had previously made to QIC from subsequent claims it was obligated to pay QIC.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

QIC is a non-contracted healthcare provider to BCBS health insurance policyholders.  In the usual health insurance reimbursement scenario, a patient pays the healthcare service provider for the care, submits a claim to her insurance company, and the insurance company reimburses the patient. However, as is typical of many healthcare transactions, the patients here did not pay QIC directly; rather, as a condition of treatment, the patients assigned to QIC their right to reimbursement from BCBS.  The patients remained liable to QIC in the event that BCBS did not reimburse the amount due for the medical services or the reimbursement did not cover the entire amount owed. The assignment contract states that "I understand that I am financially responsible for all charges regardless of any applicable or benefit payments."

Following treatment and assignment, QIC made a payment demand on BCBS. QIC disclosed the assignment of reimbursement from the patients in its demand on BCBS.  BCBS thereafter submitted payments to QIC.  BCBS

overpaid QIC for a number of claims.  BCBS requested refunds from QIC.[1]  QIC, however, did not provide a refund for any of the requests by BCBS.  BCBS then set off, or deducted, the overpaid amounts from subsequent payments to QIC.

QIC sued BCBS, claiming that it was entitled to the amounts that BCBS set off from its payments.  The parties stipulated that those setoffs "did not necessarily contain payments related to the same [patients] or same healthcare plan as those at issue in the requested refund."  The parties also stipulated that six claims (out of 284 disputed overpayments) would represent the dispute: three Employee Retirement System ("ERS") claims, one Texas Health Insurance Risk Pool ("THIRP") claim, and one claim in which BCBS served as the insurer (the "Insured claim").[2]  Each class of claims carries its own plan policy, with slightly different language and coverage.[3]

---

[1] The rationale for the refund request and the reasons for the overpaid amounts are not at issue here.

[2] BCBS refunded the setoff for the sixth claim, mooting it.

[3] In pertinent part, the ERS Plan provides:

Refund of Benefit Payments: If and when the Plan determines that benefit payments under the Plan have been made erroneously but in good faith, the Plan reserves the right to seek recovery of such benefit payments from the Participant, or Provider of services to whom such payments were made. The Plan reserves the right to offset subsequent benefit payments otherwise available by the amount of any such overpayments.

"The Plan" refers to BCBS's capacity as the administrator of the plan.  The THIRP Plan language provides:

Right to Recover Overpayment: If We make any overpayment, We can recover what We did not owe from the person to whom We made the payment or from any other appropriate person. We have this right even if the mistake was Our fault. If the overpayment was made to You, We have the right to deduct it when We pay Your claims. By "overpayment," We mean any payment or part of any payment that is not authorized by the terms of this Policy.

3

The parties both filed motions for summary judgment and the district court granted summary judgment in favor of BCBS and entered a take-nothing final judgment against QIC. Although the district court found that BCBS offset certain debts from later-acquired ones involving different patients and different benefit plans, it held that after patients assigned their right to payment to QIC, BCBS and QIC were mutually indebted and these setoffs were allowed by the Texas Insurance Code and the language of the Plans. QIC timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over the final judgment of the district court under 28 U.S.C. § 1291, and reviews the district court's grant of summary judgment in favor of BCBS de novo. *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.  DISCUSSION

QIC argues that BCBS is not entitled to the setoffs that it has taken because the debts here are not mutual. QIC argues that the debts cannot be

---

And, finally, the Insured Plan provides:

> Refund Of Benefit Payments. If [BCBS] pays benefits for Eligible Expenses incurred by you or your Dependents and it is found that the payment was more than it should have been, or was made in error, [BCBS] has the right to a refund from the person to or for whom such benefits were paid, any other insurance company, or any other organization. If no refund is received, [BCBS] may deduct any refund due it from any future benefit payment.

mutual because for each patient claim, it could only act with the capacity granted by that particular patient's assignment of the claim to reimbursement. BCBS contends that there is merely a payor–payee relationship and the setoffs were appropriate. BCBS argues on appeal that mutuality does exist and the parties acted in the same capacity. Further, it argues that it has a statutory and contractual right to set off its payment obligations to QIC by the amount it overpaid previous claims. Because BCBS had a contractual right under all three plans to deduct overpayments it had previously made to QIC from subsequent claims it was obligated to pay QIC, we AFFIRM the district court's judgment.

When the parties cross-moved for summary judgment, they disputed whether BCBS had a right to execute a setoff. BCBS, in its motion for summary judgment, argued that the Texas Insurance Code and the language of each of the plans allowed for a privately executable setoff; in other words, BCBS argued that it had a statutory and contractual right to deduct the amount it overpaid QIC for one claim against benefit payments owed to QIC for the claim of another patient under potentially a different plan. The district court agreed with BCBS that it had a right to execute a setoff, and thus granted summary judgment to BCBS and awarded a take-nothing final judgment against QIC.

Given that the contractual provisions of each of the three plans allow BCBS to privately deduct an overpayment amount paid on one patient's claim against the subsequent benefit payment owed on another patient's claim, BCBS is entitled to a take-nothing summary judgment as a matter of law.[4]

## A. Assignments

---

[4] The defendants point to Texas Insurance Code sections 843.50 and 1301.132 as providing a statutory right to privately execute setoffs. Because we find there is a contractual right to privately execute these deductions, we do not address whether there is a statutory or common law right to privately execute a setoff in this industry context.

The transactions at issue in this case each involve claims that patient–beneficiaries have assigned to QIC. An assignment is "'a manifestation to another person by the owner of a right indicating his intention to transfer, without further action or manifestation of intention, his right to such other person or third person.'" *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 334 (5th Cir. 2005) (quoting *Wolters Village Mgmt. Co. v. Merch. & Planters Nat'l Bank of Sherman*, 223 F.2d 793, 798 (5th Cir. 1955)). After an assignment, "the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance." RESTATEMENT (SECOND) OF CONTRACTS § 317(1). We have recognized that "'an assignee takes all of the rights of the assignor, no greater and no less.'" *FDIC v. McFarland*, 243 F.3d 876, 887 n.42 (5th Cir. 2001) (quoting *In re New Haven Projects Ltd. Liab. Co. v. City of New Haven*, 225 F.3d 283, 290 n.4 (2d Cir. 2000)). In other words, "an assignee . . . stands in the same position as its assignor stood." *Houk v. Comm'r*, 173 F.2d 821, 825 (5th Cir. 1949) (citations omitted).

The positive aspects of assigned rights are accompanied by their corollary negatives. "An assignee is also subject to any defenses, limitations, or *setoffs* that could be asserted against the assignor's rights." *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 721 (Tex. App.—Houston [1st Dist.] 1988) (emphasis added) (citations omitted). Thus, under the applicable laws of assignment, an assignee may be subject to a setoff if the assignor could be subject to the same setoff under the assigned contract.

BCBS argues that because QIC accepted a policyholders' assignment of their healthcare plans, QIC became subject to BCBS's setoff rights contained in those plans. BCBS further maintains that none of the plans in question

disallows this setoff.  QIC disagrees.  It argues that under all three plans, the right to set off is confined to subsequent benefit payments under the same plan and for the same patient.  Because Patient *A* and *B* can assign only the rights they possess, QIC claims that each transaction is different and BCBS should not be allowed to, in effect, bundle and consolidate all of the discrete overpayments with the discrete later-acquired debts.

## B.   Contractual Provisions

We agree that the assignments and the overpayment provisions in each of the plans are crucial to the determination of this case.  Given that QIC and BCBS do not have a separate contractual relationship, BCBS's right to setoff must stem from the assigned contracts.  Patient *A* and Patient *B* can only assign the benefits and attendant setoff obligations that are contained within their separate plans.  Here, there are three policies at issue—each with differing language on how, when, and from whom BCBS may recover the overpayment or deduct the overpayment amount from future benefits.  It is apparent upon closer examination, however, that each of the plans allow BCBS to deduct overpayment amounts previously paid to QIC from subsequent claims filed by QIC.

The ERS and Insured Plans both allow for offsets from the Provider regardless of whether the overpayment is being offset against the same patient's subsequent claim.  The ERS plan provides:

> If and when the Plan determines that benefit payments under the Plan have been made erroneously but in good faith, the Plan reserves the right to seek recovery of such benefit payments from the Participant, or Provider of services to whom such payments were made. The plan reserves the right to offset subsequent benefit payments otherwise available by the amount of any such overpayments.

The last sentence of the provision does not specify that the overpayment must be offset against the same patient's future claim, but rather states that BCBS

reserves the right to offset subsequent benefit payment made to Participant or Provider.  The Insured Plan's Refund of Benefit Payment provision states:

> If BCBSTX pays benefits for Eligible Expenses incurred by you or your Dependents and it is found that the payment was more than it should have been, or was made in error, BCBSTX has the right to a refund from the person to or for whom such benefits were paid, any other insurance company or any other organization.  If no refund is received, BCBSTX may deduct any refund due it from any future benefit payment.

Like the ERS plan, this provision does not state that it will deduct from the same patient's future benefit payment, instead stating that it will deduct any refund due to it from any future benefit payment.

The language in the THIRP Plan differs from the language of the ERS and Insured Plans, but it too gives BCBS the right to deduct overpayments from subsequent claims.  The THIRP Plan's Right to Recover an Overpayment provision states:

> If We make any overpayment, We can recover what We did not owe from the person to whom We made the payment or from any other appropriate person.  We have this right even if the mistake was Our fault.  If the overpayment was made to You, We have the right to deduct it when We pay Your claims.  By "overpayment," We mean any payment or part of any payment that is not authorized by the terms of this Policy.  We do not have the right to recover from You any overpayment that was fraudulently obtained by another person without Your knowledge.

The first sentence clearly states that BCBS may recover any overpayment it makes from the "person to whom [BCBS] made the payment or any other appropriate person."  Here, BCBS made an overpayment to QIC, and BCBS sought to recover the overpayment amount from QIC. The third sentence seems to restrict BCBS's deduction of overpayments to only when that particular patient makes the subsequent claim.  However, QIC has stepped into the shoes

of the patient–beneficiary by virtue of the assignments.  When reading this sentence with this patient assignment in mind, we must reasonably interpret this sentence as creating a right to privately deduct the amount it previously overpaid QIC from QIC's subsequent claims.

No language in any of the three plans require BCBS to confine its contractual setoff rights to deductions from subsequent benefit payments to the same patient or under the same plan.  Additionally, QIC does not point to any statutory or common law prohibition against such contractually created setoff rights, nor can we find one.  Thus, BCBS had the right to deduct from subsequent benefit claims to QIC the amounts it had previously overpaid QIC.

The parties stipulated that the factual information contained within the Claims Spreadsheet was correct, and thus that overpayments had occurred. When QIC did not submit a refund in response to refund requests from BCBS, the latter was within its rights to recover the amount it overpaid QIC by deducting previous overpayment amounts from future payments due.  Because we find that BCBS had a contractual right to deduct overpayment amounts under each of the three plans, we affirm the judgment of the district court.

AFFIRMED.