# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 8, 2011

No. 10-50561

Lyle W. Cayce
Clerk

GENNICA R. MATOSKY; BRIAN C. MATOSKY,

Plaintiffs - Appellants

v.

M.D. MARK G. MANNING,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:07-CV-51

Before GARWOOD, GARZA, and DENNIS, Circuit Judges.

PER CURIAM:[*]

The plaintiffs in this diversity case, Gennica Matosky and her husband
Brian Matosky, residents of Pennsylvania, brought suit against the
defendant, Dr. Mark Manning, a resident of Texas, for alleged medical
malpractice, under Texas law. The Matoskys contend that Dr. Manning
negligently performed a fine needle aspiration (FNA) biopsy on Mrs.
Matosky's left breast, puncturing her chest wall, heart, nearby blood vessels,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-50561

or pericardium (the sac-like structure around the heart), causing her to suffer pericardial effusion (excess fluid around the heart) and consequently cardiac tamponade (pressure on the heart due to fluid buildup).  The Matoskys appeal two decisions made by the district court: (1) the district court's grant of Dr. Manning's motion to exclude the testimony of the Matoskys' only medical expert witness, Dr. Michael Leitman; and (2) the district court's grant of Dr. Manning's motion for summary judgment, which was based on its determination that the testimony of Dr. Leitman was crucial to establishing essential elements of the Matoskys' case.  We conclude that the district court did not abuse its discretion in granting Dr. Manning's motion to exclude the testimony of Dr. Leitman, and that the district court did not err in granting summary judgment in favor of Dr. Manning.

## BACKGROUND

On February 8, 2006, Dr. Manning performed an FNA biopsy on Mrs. Matosky, in order to diagnose a lesion in her breast.  Mrs. Matosky chose to undergo an FNA biopsy because it was the least invasive procedure available. An FNA biopsy involves inserting a needle, which is attached to a syringe, into the lesion in order to obtain a sample of the tissue.  The needle used in this case was typical of needles used in FNA biopsies, and was about 1.5 inches long.  Dr. Manning conducted the FNA biopsy with the assistance of Laurie Hernandez, an ultrasound technician.  Ms. Hernandez first used an ultrasound machine to localize the lesion.  Then, while Dr. Manning performed the biopsy, Ms. Hernandez continued to operate the machine, in order to monitor the location of the needle.  Ms. Hernandez testified that the needle only penetrated the lesion and did not go near Mrs. Matosky's chest wall.

Dr. Manning took two samples from Mrs. Matosky's breast.  Although the first insertion of the needle was uneventful, Mrs. Matosky testified that

with the second insertion, she "felt a horrible, sharp-like, stabbing pain in her breast" and "told him to stop," but he did not.  Mrs. Matosky then felt "a pop," and her "whole left side went numb and it hurt."  However, Ms. Hernandez testified that she did not recall Mrs. Matosky complaining or asking Dr. Manning to stop during the procedure.

After he finished, Dr. Manning left the room to talk to Mr. Matosky.  Ms. Hernandez then called him back into the room, saying that Mrs. Matosky was having trouble breathing and complaining of pain.  Dr. Manning listened to Mrs. Matosky's heart and lungs with a stethoscope and discerned no problems.  He then ordered an x-ray, which also showed no problems with Mrs. Matosky's lungs, heart, or blood vessels around her heart.  He also gave her a prescription for pain medication, in case she had internal bleeding in her breast from the biopsy, which could cause pain and pressure in her breast.  Dr. Manning did not hear again from Mrs. Matosky until he received notice of the lawsuit.

On February 11, 2006, three days after the FNA biopsy, Mrs. Matosky went to the emergency room at a medical center, complaining of abdominal pain, chest pain, dizziness, shortness of breath, diarrhea, and vomiting, which she stated had started that day.  She also complained of chest pain and pressure on her chest, as well as severe headaches.  Earlier that day, she said that she had experienced a syncopal spell, where she lost consciousness and, upon regaining consciousness, discovered that she was sweating profusely and had urinated on herself.

Mrs. Matosky was admitted to the hospital.  During her stay, Mrs. Matosky underwent several chest x-rays during this time.  None of them showed any injury to her chest wall, heart, or surrounding blood vessels.  Upon her discharge on February 18, 2006, her final diagnoses included acute gastroenteritis, dehydration, and upper respiratory infection.

No. 10-50561

Just over a day later, on February 19, 2006, Mrs. Matosky went to another medical center, after suffering another syncopal spell, and complaining of symptoms including chest pain, shortness of breath, abdominal pain, and nausea.  She was diagnosed with pericardial tamponade and pericardial effusion, and consequently received a pigtail catheter, a tube that drained the excess fluid around her heart.  When the catheter was removed, Mrs. Matosky immediately developed, for the second time, pericardial effusion and cardiac tamponade.  She underwent exploratory surgery on February 21, 2006.  It was determined, and is undisputed, that the second episode of pericardial effusion and cardiac tamponade was caused by injury to a blood vessel when the catheter was either being placed or removed.  The only disputed question in this case is what caused the first episode.  In addition, the surgeon who operated on Mrs. Matosky found no evidence of injury to her heart or chest wall.  Mrs. Matosky suffered no further complications, and was discharged on February 27, 2006.

The Matoskys brought a diversity suit under Texas law in district court against Dr. Manning.[1]  The Matoskys initially designated two expert witnesses: Dr. Michael Leitman and Dr. Arthur Sitelman.  Dr. Sitelman, a pathologist, was subsequently re-designated as an expert for Dr. Manning.  This was because after reviewing slides of the pericardial fluid obtained from Mrs. Matosky during her second hospital stay, he concluded that his findings "point to a pathological event or events," such as "autoimmune disorders . . . viral infections, or idiopathic [unknown] [causes]," as the cause of her symptoms.  He also concluded that his findings "do not support" the theory

---

[1] The Matoskys included in their suit another defendant, the doctor who provided Mrs. Matosky's care during her hospital stay of February 11-18, 2006.  However, they settled with him before the case reached the summary judgment stage.

No. 10-50561

that trauma from the FNA biopsy caused her symptoms.  Thus, only Dr. Leitman's testimony is at issue in this appeal.

In contrast to Dr. Sitelman, in a ten-page letter, Dr. Leitman opined that there was a "reasonable medical probability" that Dr. Manning's actions were negligent, and that he injured Mrs. Matosky's "heart, vessels, and/or pericardium" with the needle while conducting the biopsy.  He further explained that he thought it "medically probable" that the injury "result[ed] in [Mrs. Matosky's] cardiac tamponade . . . ."  Dr. Leitman was also deposed about the opinions that he expressed in the letter.

Dr. Manning filed a motion to exclude Dr. Leitman's testimony, as well as a motion for summary judgment.  The district court granted both motions.  First, the district court concluded that Dr. Leitman's testimony should be excluded as unreliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), because (1) Dr. Leitman simply asserted that the needle punctured Mrs. Matosky's chest wall, heart, pericardium, or surrounding blood vessels, without an evidentiary basis for that assertion; and (2) he failed to consider other causes of Mrs. Matosky's symptoms, such as a viral syndrome.

In addition, the district court determined that Dr. Leitman's testimony was crucial to establishing elements of a medical malpractice claim: (1) negligence (or breach of duty) on the part of Dr. Manning in puncturing Mrs. Matosky's chest wall, heart, or surrounding blood vessels with the biopsy needle; and (2) causation, i.e., that the puncture caused a cardiac injury, resulting in Mrs. Matosky's suffering pericardial effusion and cardiac tamponade.  As a result, the district court granted Dr. Manning's motion for summary judgment.

The Matoskys timely appealed, contending (1) that the district court abused its discretion in excluding Dr. Leitman's testimony and (2) that the

5

No. 10-50561

district court erred in granting Dr. Manning's motion for summary judgment.[2]

## STANDARD OF REVIEW

Courts of appeals "review[] a district court's admission or exclusion of expert testimony. . . . for an abuse of discretion." *Moore v. Ashland Chem. Co.*, 151 F.3d 269, 274 (5th Cir. 1998) (en banc) (citing *General Electric Co. v. Joiner*, 522 U.S. 136 (1997)). "Because a district court has broad discretion in deciding the admissibility *vel non* of expert testimony, we will not find error unless the ruling is *manifestly erroneous*." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (citing *Joiner*, 522 U.S. at 141-42). A "[m]anifest error" is an error "that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Id.* (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004) (citing Black's Law Dictionary 563 (7th Cir. ed. 1999))).

In addition, this court reviews a district court's grant of summary judgment de novo. *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Quality InfusionCare, Inc.*, 628 F.3d at 728 (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008)). "[S]ubstantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

[2] The Matoskys also challenge the district court's questioning of Dr. Leitman's qualifications. We need not address this issue, as the district court indicated that it struck Dr. Leitman's testimony because it determined that his testimony was unreliable, not because Dr. Leitman was unqualified.

No. 10-50561

242, 248 (1986). "When, as here, jurisdiction is based on diversity, we apply the substantive law of the forum state." *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citing *Erie R. v. Tompkins*, 304 U.S. 64 (1938)). Thus, in this case, we use Texas law to determine which facts are material.

## DISCUSSION

### A.

Federal Rule of Evidence 702, which was amended in 2000, post-*Daubert*, states that an expert witness "may testify . . . in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Rule 702 encompasses the *Daubert* inquiry, and also gives district courts flexibility in determining whether an expert's testimony is reliable. *See* Fed. R. Evid. 702 advisory committee's note (2000 Amendments) (explaining that "[t]he amendment . . . provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony," and includes but is not limited to the *Daubert* factors); *see also Guy*, 394 F.3d at 325 ("Amended Rule 702 reflects the Supreme Court's decisions in *Daubert* and its progeny emphasizing the district courts' broad latitude in weighing the reliability of expert testimony for admissibility.").

The Matoskys contend that Dr. Leitman used a reliable methodology to arrive at his conclusions: he reviewed the medical records and testimony of Mrs. Matosky and used his medical knowledge to arrive at a conclusion about how Mrs. Matosky developed the pericardial effusion and cardiac tamponade. However, "[t]he expert's assurance[] that he has utilized generally accepted scientific methodology is insufficient" on its own to establish that his testimony is reliable. *Moore*, 151 F.3d at 276.

7

No. 10-50561

The district court did not abuse its discretion in determining that Dr. Leitman's testimony was unreliable under "the Rule 702/*Daubert* analysis," *Guy*, 394 F.3d at 325.[3]  Dr. Leitman's testimony was dependent on his assertion that the 1.5-inch needle used by Dr. Manning penetrated through Mrs. Matosky's breast and caused a cardiac injury, and that assertion does not have a sufficient factual basis.  *See* Fed. R. Evid. 702(1).  Ms. Hernandez, the ultrasound technician who monitored the needle during the FNA biopsy, testified that the 1.5-inch biopsy needle never went past the lesion in Mrs. Matosky's breast, nor did it come close to her chest wall.  Likewise, none of Mrs. Matosky's x-rays showed a cardiac injury, and the surgeon who operated on Mrs. Matosky found no sign of injury to her heart or her chest wall.  When asked about the use of an ultrasound machine to monitor the needle's location during the biopsy, Dr. Leitman acknowledged that he had not seen any of the images taken during the procedure.  However, Dr. Leitman opined that "clearly there must have been some misinterpretation [of the ultrasound images] for the needle to end up in the pericardium rather than simply in the breast mass."  He also opined that Mrs. Matosky experienced a popping sensation during the FNA biopsy because the needle had punctured either her pericardium or her chest wall.  But Dr. Leitman never explained whether such an injury was the only circumstance in which a patient could experience a popping sensation, or why any alternative explanations for the popping sensation should be ruled out.

The district court did not abuse its discretion in determining that Dr. Leitman's conclusory assertion that the FNA biopsy resulted in a cardiac

---

[3] Although the district court pointed to the *Daubert* factors "as very good guideposts," it appears that the district court also implicitly relied on the more general principle of Rule 702 that testimony is unreliable when it is based on insufficient facts, or derived from an unreliable methodology.

injury was unreliable, and thus in excluding his testimony. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 157 (1999) (quoting *Joiner*, 522 U.S. at 146) (quotation marks omitted).

### B.

"In a medical malpractice case [brought in Texas], plaintiffs are required to show evidence of a 'reasonable medical probability' or 'reasonable probability' that their injuries were proximately caused by the negligence of one or more defendants." *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995). A plaintiff must demonstrate causation "by a preponderance of the evidence." *Id.* (quoting *Kramer v. Lewisville Mem. Hosp.*, 858 S.W.2d 397, 400 (Tex. 1993)) (quotation marks omitted).

Without Dr. Leitman's testimony, the Matoskys cannot demonstrate a genuine issue of material fact regarding causation. Aside from Dr. Leitman's testimony, the Matoskys cite to the fact that trauma from the biopsy was listed in some of Mrs. Matosky's medical notes as a possible cause, among several others, of the pericardial effusion and cardiac tamponade. However, the doctors who treated Mrs. Matosky testified that they included the biopsy as a possible cause of Mrs. Matosky's pericardial effusion simply because it was part of the medical history that she gave them. The doctors also did not know what kind of biopsy was involved — whether it was an FNA biopsy or a more invasive procedure — nor were they aware of the length of the needle used in Mrs. Matosky's biopsy. Moreover, the district court noted that none of the doctors involved in the case, including Dr. Leitman, pointed to a previous case, whether their own or that of another doctor, where an FNA biopsy caused a cardiac injury resulting in pericardial effusion and cardiac tamponade. The record also shows that other potential causes which were

also listed in Mrs. Matosky's medical notes, such as a viral syndrome, were not ruled out as possible causes. Thus, at most, this evidence might perhaps support an inference that there is a possibility, not a reasonable medical probability, that the biopsy was the cause of Mrs. Matosky's symptoms.

The Matoskys also cite to a case report involving an incident of cardiac injury resulting from a "needle localized surgical breast biopsy." We agree with the district court that this case report is not probative. First, the procedure described in the case report was a different, more invasive procedure that involved a needle, a hooked wire, and the surgical removal of breast tissue. In contrast, an FNA biopsy involves the insertion of a single 1.5-inch needle into the lesion. Second, the patient in the report was an elderly, thin patient who had very little breast tissue, whereas the record shows that Mrs. Matosky has "significant breast tissue and normal chest wall tissue."

In sum, a reasonable factfinder could not determine that this evidence demonstrates a "reasonable medical probability" that the 1.5-inch needle penetrated beyond Mrs. Matosky's lesion and caused her a cardiac injury, resulting in pericardial effusion and cardiac tamponade. Thus, the district court did not err in granting Dr. Manning's motion for summary judgment.

## CONCLUSION

We conclude that (1) that the district court did not abuse its discretion in granting Dr. Manning's motion to exclude Dr. Leitman's testimony, and (2) that the district court did not err in granting Dr. Manning's motion for summary judgment. The judgment of the district court is AFFIRMED.