# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 15, 2016

No. 15-10510

Lyle W. Cayce
Clerk

CONTINENTAL INSURANCE COMPANY, as Assignee of Aetna Life
Insurance Company, of Hartford Connecticut,

Plaintiff–Appellant,

v.

DAVID DAWSON,

Defendant–Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:13-CV-4150

Before KING, JOLLY, and PRADO, Circuit Judges.

PER CURIAM:*

Continental Insurance Company ("Continental"), acting as an assignee, filed a lawsuit in federal district court to enforce its subrogation and reimbursement rights against David Dawson. The district court granted summary judgment in favor of Dawson, holding that a prior agreement between Dawson and Continental precluded Continental's recovery. Because

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-10510

we conclude that the district court misconstrued the parties' agreement, we REVERSE and REMAND.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 16, 2007, David Dawson was severely injured in the course of his employment with Hill International, Inc. ("Hill") in Baghdad, Iraq. Dawson suffered burns from dangerously hot water while taking a shower in his assigned living quarters. Continental was Hill's workers' compensation carrier and, as such, was required to pay for Dawson's medical expenses and indemnity in accordance with the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950. Aetna Life Insurance Company ("Aetna") was Dawson's group health insurance carrier through Hill's employee benefit plan established under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1091c.

Dawson was initially treated in Germany. The expenses for Dawson's overseas treatment were billed to Aetna, rather than to Continental. Between November 18, 2007, and January 24, 2008, Aetna paid $282,774.51 to overseas medical providers on behalf of Dawson. Continental paid for Dawson's subsequent medical treatment.

In 2009, Dawson filed a lawsuit in Texas state court against Fluor Intercontinental, Inc. ("Fluor"), which managed Dawson's living quarters in Iraq. Both Continental and Aetna intervened in the state lawsuit, asserting liens upon any settlement or judgment obtained against Fluor for the amounts they paid to or on behalf of Dawson. In April 2010, Continental and Dawson executed a settlement agreement (the "Settlement Agreement") pursuant to § 8(i) of the LHWCA, 33 U.S.C. § 908(i).[1] The Settlement Agreement was

---

[1] A settlement reached under § 908(i) is commonly referred to as a § 8(i) settlement. *Cooper v. Int'l Offshore Servs., L.L.C.*, 390 F. App'x 347, 348 n.1 (5th Cir. 2010).

approved one month later by the U.S. Department of Labor ("DOL"). It provided in pertinent part:

> 1. [Continental] will pay [Dawson] a lump sum of $260,759.68 in return for a complete discharge of [Continental's] liability for compensation and past medical care arising out of the subject injury . . . .
>
> 2. [Continental] further agree[s] to provide payment for any reasonable and necessary medical treatment related to the injury of November 16, 2007 that should arise prior to the date of approval of this agreement.
>
> 3. [Continental] assert[s] a lien upon any settlement or judgment obtained in favor of [Dawson] in his lawsuit against Fluor . . . .

Pursuant to the Settlement Agreement, Continental's lien amounted to $388,457.67. Ultimately, after the jury in Dawson's state lawsuit rendered judgment in his favor, he entered into a confidential settlement with Fluor and paid Continental the full amount of its lien under the Agreement.

In May 2012, Aetna filed a claim with the DOL against Continental for reimbursement of the medical benefits Aetna had paid on Dawson's behalf. Aetna and Continental agreed to settle this claim. In exchange for a payment of $219,000 from Continental, Aetna assigned to Continental its subrogation and reimbursement rights connected to Dawson's medical treatment. Continental thereafter sought a stipulation from Dawson regarding those rights. After Dawson refused, Continental filed this suit in federal district court, seeking to enforce Aetna's subrogation and reimbursement rights related to Aetna's payments of $282,774.51 for Dawson's overseas medical treatment.

The district court denied Continental's motion for summary judgment and granted Dawson's cross-motion for summary judgment against Continental. Applying Texas law, the court held that the terms of the Settlement Agreement obligated Continental to pay for Dawson's past medical

No. 15-10510

treatment, *i.e.*, treatment provided before the DOL ratified the Settlement Agreement, which included Aetna's payments on Dawson's behalf. In turn, the court held that the Settlement Agreement precluded Continental from enforcing the subrogation rights that Aetna had assigned to it and limited Continental's recovery from Dawson to the amount of its lien specified in the Agreement, which Dawson had already paid. This appeal followed.

## II. STANDARD OF REVIEW

We review the district court's judgment on cross-motions for summary judgment de novo. *McCorkle v. Metro. Life Ins. Co.*, 757 F.3d 452, 456 (5th Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. DISCUSSION

Dawson's employee benefits plan, which was governed by ERISA, provided Aetna with subrogation and reimbursement rights pertaining to third-party liability for his injuries. Dawson does not dispute that Aetna was a fiduciary of the plan. Under 29 U.S.C. § 1132(a)(3), an ERISA fiduciary may bring suit for "appropriate equitable relief . . . to enforce . . . the terms of the plan." Therefore, Continental—as an assignee of Aetna's subrogation and reimbursement rights—has derivative standing to enforce claims under 29 U.S.C. § 1132. *See La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529, 537 (5th Cir. 2006).

### A.    The 2010 Settlement Agreement and the 2013 Assignment

Continental argues that the district court erred in holding that the Settlement Agreement required it to pay for Dawson's past medical treatment and thus precluded any subsequent recovery for those payments beyond those contemplated by the Settlement Agreement. We agree.

4

No. 15-10510

The parties do not dispute the district court's conclusion that Texas law governs the interpretation of the Settlement Agreement. Under Texas law, "a contract is to be construed in accordance with its plain language." *Gen. Am. Indem. Co. v. Pepper*, 339 S.W.2d 660, 661 (Tex. 1960). "[C]ourts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). The interpretation of an unambiguous contract is a question of law. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

Under Section 2 of the Settlement Agreement, Continental agreed "to provide payment for any reasonable and necessary medical treatment . . . that should arise prior to the approval of this agreement." The phrase "should arise" is forward looking and refers to a future contingency. *See* Randolph Quirk et al., A Comprehensive Grammar of the English Language 1093 (1985) (stating that the word "should" followed by the infinitive expresses a future hypothetical condition). Thus, a plain reading of Section 2 reveals that the parties agreed that Continental would be required to pay only for future medical expenses incurred between the date of the Agreement and the date of the requisite DOL approval, rather than for all past medical expenses incurred before the Agreement was executed.

This construction of Section 2 is supported by the Settlement Agreement's other provisions. Section 1 provides that Continental was to receive "a complete discharge of [its] liability for . . . past medical care arising out of [Dawson's] injury." Dawson fails to explain how the Agreement can both completely discharge Continental's liability for past medical care and, at the same time, require it to pay for additional past medical treatment. Indeed, Dawson does not point to any medical expense incurred prior to the date of the agreement for which Continental's liability would have been discharged under

5

his reading of the Settlement Agreement. For Section 1's discharge of Continental's liability for past medical treatment to have any effect, Section 2 must be construed to obligate Continental to pay only for medical treatment that should arise after the Agreement's execution date. *See Coker*, 650 S.W.2d at 393.

We therefore conclude that the Settlement Agreement did not require Continental to repay Aetna for Dawson's past medical treatment and, in turn, does not preclude Continental's recovery of the subrogation and reimbursement rights that Aetna had assigned to it.

## B.    Waiver

Alternatively, Dawson argues that, regardless of the Settlement Agreement's effect, Aetna waived its ability to enforce its subrogation rights and that Continental, acting as an assignee, cannot enforce the interests that Aetna has waived. An assignee, such as Continental, is "subject to any defenses, limitations, or setoffs that could be asserted against the assignor's rights." *See Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 729 (5th Cir. 2010) (emphasis omitted) (quoting *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 721 (Tex. App.—Houston [1st Dist.] 1988)). Under Texas law, "[w]aiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). Dawson claims that the waiver occurred when, in the course of Aetna's DOL proceeding against Continental, Aetna stated that it was not seeking payment from Dawson in that proceeding.

We find Dawson's argument unavailing. Aetna's statements that it did not seek payment from Dawson through an administrative proceeding to which, according to Aetna, Dawson was not a party does not amount to an intentional relinquishment of its subrogation rights nor conduct that is inconsistent with claiming those rights. Aetna continued to seek enforcement

No. 15-10510

of its subrogation interest in Texas state court after it made that statement.[2] Further, during that same administrative proceeding, Aetna entered into a § 8(i) settlement agreement, which the DOL ratified, that expressly reaffirmed the value of its lien against Dawson. *Cf. Ferrell v. Charles Mach. Works Inc.*, 156 F.3d 182, 1998 WL 546522, at *5 (5th Cir. Aug. 13, 1998) (unpublished) (finding no waiver of ERISA subrogation rights given the lack of an "express waiver . . . in a settlement document, judicial or otherwise"). Under the settlement, Aetna agreed both to assign the full value of its $282,774.51 lien against Dawson and to assist Continental in collecting that lien in Dawson's then-pending state lawsuit. Thus, Continental can assert the subrogation and reimbursement interests that Aetna has assigned to it, and the Settlement Agreement does not preclude the recovery of those interests.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court in favor of Dawson and REMAND for further proceedings consistent with this opinion.

---

[2] Aetna first requested payment from Dawson in January 7, 2011, by sending him a demand letter.

7