# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 12, 2025

Lyle W. Cayce
Clerk

_____

No. 24-10561
_____

GUARDIAN FLIGHT, L.L.C.; MED-TRANS CORPORATION,

*Plaintiffs—Appellants*,

*versus*

HEALTH CARE SERVICE CORPORATION,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:23-CV-1861

_____

Before SMITH, CLEMENT, and DUNCAN, *Circuit Judges*.

STUART KYLE DUNCAN, *Circuit Judge*:

Appellants Guardian Flight, LLC, and Med-Trans Corporation, two air ambulance providers ("Providers"), appeal the dismissal of their complaint against Appellee Health Care Service Corporation ("HCSC") for HCSC's alleged failure to timely pay dispute resolution awards under the No Surprises Act ("NSA"). Because we agree with the district court that the NSA does not contain a private right of action, and because Providers have failed to allege facts sufficient to state a derivative claim under the Employee Retirement Income Security Act ("ERISA") or for quantum meruit under Texas law, we affirm.

No. 24-10561

I

A

Congress enacted the NSA in 2022 to protect patients from surprise medical bills incurred when they receive emergency medical services from out-of-network healthcare providers. *See* 42 U.S.C. §§ 300gg-111, 300gg-112. The NSA achieves this by, *inter alia*, relieving patients from financial liability for surprise bills and creating an Independent Dispute Resolution ("IDR") process for billing disputes between providers and insurers. *Id.* § 300gg-111(c)(1)–(5); *see generally Tex. Med. Ass'n v. United States Dep't of Health & Hum. Servs.*, 110 F.4th 762, 767–78 (5th Cir. 2024) (discussing the NSA).[1]

Under the IDR provisions, the provider and insurer first try to agree on a price for the services. *Id.* § 300gg-111(c)(1)(A). If the negotiation fails, the provider or payor has four days to initiate IDR proceedings. *Id.* § 300gg-111(c)(1)(B). If the parties pursue IDR, either the parties or the Department of Health and Human Services ("HHS") selects a certified independent dispute resolution entity ("CIDRE") to referee. *Id.* § 300gg-111(c)(4).

The CIDRE determines the amount the payor owes the provider. *Id.* § 300gg-111(c)(5). The CIDRE sets that amount via "baseball-style" dispute resolution where the provider and insurer each submit an offer, and the CIDRE selects one party's offer as the award. *Id.* §§ 300gg-112(b)(5). In selecting which offer to award, the CIDRE must consider the insurer's "qualifying payment amount," a heavily regulated rate that reflects the "median of the contracted rates recognized by the plan or issuer . . . for the

---

[1] The regulations invalidated by *Texas Medical Association* have no effect on this case.

same or a similar item or service" offered in the same insurance market and geographic area. *Id.* § 300gg-111(a)(3)(E)(i).

In the absence of a fraudulent claim or evidence of a misrepresentation of facts to the CIDRE, the IDR award "shall be binding upon the parties involved," and payment of the award "shall be made . . . not later than 30 days after the date on which such determination is made." *Id.* § 300gg-112(b)(5)(D) (incorporating 42 U.S.C. § 300gg-111(c)(5)(E)); *id.* § 300gg-112(b)(6). Patients are not involved in open negotiations or the IDR process, and payors are directed to issue any IDR award payments directly to the provider. *See id.* § 300gg-112(b)(1)(A), (b)(5)(B), (b)(6).

The NSA also provides that an IDR award "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a)" of the Federal Arbitration Act ("FAA"). *Id.* §§ 300gg-112(b)(5)(D), 300gg-111(c)(5)(E). HHS has the authority to enforce provider and payor non-compliance with the NSA's provisions. *Id.* § 300gg-22(b)(2)(A) (providing for HHS enforcement against some payors for NSA non-compliance); *id.* § 300gg-134(b) (providing for HHS enforcement against providers for NSA non-compliance).

B

In this case, Providers initiated IDR under the NSA to resolve their billing disputes with HCSC. After IDR concluded, Providers sued HCSC alleging it (1) failed to timely pay Providers thirty-three IDR awards in violation of the NSA; (2) improperly denied benefits to HCSC's beneficiaries in violation of ERISA by failing to pay Providers; and (3) was unjustly enriched because Providers conferred a benefit on HCSC that HCSC has never paid.

The district court granted HCSC's motion to dismiss the complaint under Rule 12(b)(1) and 12(b)(6). It dismissed the NSA claim after

concluding that the NSA contains no private right of action. The court dismissed the ERISA claim for lack of standing because Providers, as assignees of HCSC's individual plan beneficiaries, did not show the beneficiaries suffered injury given that the NSA shields them from liability and removes them from the IDR process. Finally, the court dismissed Providers' quantum meruit claim because they did not perform their air ambulance services for HCSC's benefit. The district court also ruled that granting Providers leave to amend would be futile. Providers timely appealed.

## II

We review *de novo* a district court's "dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) or for failure to state a claim pursuant to Rule 12(b)(6)." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 421 (5th Cir. 2013). "Legal questions relating to standing and mootness are also reviewed de novo," *ibid.*, as are questions of statutory interpretation. *Seago v. O'Malley*, 91 F.4th 386, 389 (5th Cir. 2024).

## III

Providers argue that the district court erred in dismissing their NSA, ERISA, and quantum meruit claims. We address each claim in turn.

## A

The district court correctly dismissed Providers' claim against HCSC for its failure to timely pay dispute resolution awards obtained under the NSA because the NSA provides no private right of action.

First, as the district court correctly observed, the NSA contains no express right of action to enforce or confirm an IDR award. The only right of action provided derives from the incorporated vacatur sections of Section 10(a) of the FAA—none of which applies to this dispute, as Providers concede. So, we begin with the presumption that Congress did not intend to

create any private cause of action. *Sigmon v. Sw. Airlines Co.*, 110 F.3d 1200, 1205 (5th Cir. 1997).

To overcome this presumption, Providers must show "that Congress affirmatively contemplated private enforcement when it passed the relevant statute." *Ibid.* (cleaned up); *see also Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 521–22 (5th Cir. 2002) (noting plaintiffs' "heavy burden" to "overcome the familiar presumption that Congress did not intend to create a private right of action"); *see also* Anthony J. Bellia, Jr., *Justice Scalia, Implied Rights of Action, and Historical Practice*, 92 Notre Dame L. Rev. 2077, 2090 (2017) ("[H]istorically federal courts did not supply private rights of action for federal statutory violations independently of congressional authority.").

Providers do not carry their heavy burden of showing Congress contemplated a private right of action in the NSA. Indeed, the NSA's text and structure point in the opposite direction. The NSA expressly *bars* judicial review of IDR awards *except* as to the specific provisions borrowed from the FAA (sections which, again, Providers concede are inapplicable). *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II) (IDR awards "*shall not be subject to judicial review*, except in a case described" in 9 U.S.C. § 10(a) (emphasis added)); *id.* § 300gg-112(b)(5)(D) (incorporating the same).[2] The district

---

[2] Those provisions authorize a court to vacate an arbitral award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

court correctly reasoned that this bar on judicial review strongly suggests Congress did not insert a private right of action into the statute.

Providers counter that they seek only judicial *enforcement* of an IDR award, not judicial *review* of one. That is a distinction without a difference. The term "judicial review" is broad enough to include a court's order to enforce an IDR award. "Review" includes "[p]lenary power *to direct and instruct an agent or subordinate*, including the right to remand, modify, or vacate any action by the agent or subordinate, or to act directly in place of the agent or subordinate." *Review*, Black's Law Dictionary (12th ed. 2024) (emphasis added).[3]

Furthermore, courts interpreting other statutes, including the FAA, have held that "judicial review" includes actions that seek to confirm or enforce a dispute resolution award. *See, e.g.*, *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 611 (1993) (explaining ERISA "provides for judicial *review* of the arbitrator's decision by an action in the district court to *enforce*, vacate, or modify the award" (emphases

---

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4).

[3] It follows that judicial review also encompasses the power to *vacate* IDR determinations. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) ("The Federal Arbitration Act . . . provides for expedited judicial review to confirm, vacate, or modify arbitration awards."). That disposes of the slightly different argument made in the other NSA case we decide today. *See Guardian Flight, L.L.C. v. Med. Evaluators of Tex. ASO, L.L.C.*, No. 24-20051, --- F.4th --- (5th Cir. ___, 2025). As we explain in that case, the provider there asserts that the NSA's bar on judicial review does not touch a court's power to declare an IDR determination *void*. We reject that argument for the same reason we reject the Providers' argument here: it artificially narrows the term "judicial review" that Congress used in the NSA.

added)).[4] And Congress uses the term "judicial review" when referring to private causes of action. *See*, *e.g.*, 33 U.S.C. § 2236(b)(2) (creating private right of "action to seek judicial review"); 42 U.S.C. § 10139(c) (referring to a "civil action for judicial review").

In sum, Providers' enforcement action depends on the availability of a private right of action not present in the NSA. As a result, the NSA's plain text bars this suit. We will not find an implied right of action where Congress expressly forecloses it. *See Sigmon*, 110 F.3d at 1206 (holding a statute's "express bar" on lawsuits "compel[led] the conclusion that Congress did not intend to provide a private remedy").

Congress could have done otherwise. Section 9 of the FAA empowers courts to confirm or enforce arbitration awards, *see* 9 U.S.C. § 9, but Congress chose not to incorporate § 9 into the NSA. It incorporated only parts of § 10. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). By contrast, in other statutes, Congress *has* incorporated § 9 to create a private right of action. *See* 5 U.S.C. § 580(c) ("A final award is binding on the parties to the arbitration proceeding, and may be enforced pursuant to *sections 9 through 13* of" the FAA (emphasis added)).[5] So, Congress knew how to create a private right of

---

[4] *See also Hall St. Assocs.*, 552 U.S. at 578 (interpreting "judicial review" in the FAA to include "confirm[ing]" an arbitral award); *Mid Atl. Cap. Corp. v. Bien,* 956 F.3d 1182, 1194 (10th Cir. 2020) (same); *Med. Shoppe Int'l, Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 488 (8th Cir. 2010) (same).

[5] In a 28(j) letter, Providers point out that a federal district court recently found an implied private right of action in the NSA, reasoning it would be absurd to interpret the statute otherwise. *See Guardian Flight LLC v. Aetna Life Ins. Co.*, No. 3:24-cv-680-MPS, 2025 WL 1399145, at *8–9 (D. Conn. May 14, 2025). The court also tried to explain Congress's decision to omit the FAA's express private right of action from the NSA: Unlike "binding" IDR awards, FAA arbitration awards are not self-enforcing, so an express private right of action is necessary to confirm them. *Id.* at *8. We are unconvinced. We follow the NSA's plain text and structure in concluding Congress created no general private right of action in the NSA. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). We are

action in the NSA—and has done so elsewhere—but declined to do so. *Howard Univ. Hosp. v. D.C. Dep't of Emp. Servs.*, 952 A.2d 168, 174 (D.C. 2008) ("Where a statute, with reference to one subject, contains a given provision, the omission of such [a] provision from a similar statute concerning a related subject . . . is significant to show [that] a different intention existed." (alterations in original) (quoting *Smith v. D.C. Dep't of Emp. Servs.*, 548 A.2d 95, 100 n.13 (D.C. 1988)); *Turtle Island Restoration Network v. Evans*, 284 F.3d 1282, 1296 (Fed. Cir. 2002) ("When Congress omits from a statute a provision found in similar statutes, the omission is typically thought deliberate." (citing *I.N.S. v. Phinpathya*, 464 U.S. 183, 190 (1984))); 2B Norman Singer & Shambie Singer, Sutherland Statutory Construction § 51:2 (7th ed. 2024) ("[C]ourts presume a different intent when a legislature omits words used in a prior statute on a similar subject.").

Instead, Congress took a different tack: it empowered HHS to assess penalties against insurers for failure to comply with the NSA. *See* 42 U.S.C. § 300gg-22(b)(2)(A); 45 C.F.R. § 150.301 *et seq.* The Centers for Medicare and Medicaid Services (CMS), an agency within HHS, has acted on that authority by soliciting provider complaints and compelling payors to pay IDR awards where appropriate.[6] CMS maintains an online portal through which providers may submit complaints regarding the IDR process. *See No Surprises Complaint Form*, CMS, https://perma.cc/HHD2-8HW7.

---

likewise unpersuaded by the district court's ERISA analysis; like Providers, the court relied on precedent that predates the NSA's enactment. *See infra* Section III.B; *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015).

[6] *See* U.S. Gov't Accountability Off., GAO-24-106335, Private Health Insurance: Roll out of Independent Dispute Resolution Process for Out-Of-Network Claims Has Been Challenging 35 (2023).

The inference from the NSA's broader structure, then, is plain. The "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001); *Sigmon*, 110 F.3d at 1206 (holding the "existence of [an] administrative scheme of enforcement is strong evidence that Congress intended the administrative remedy to be exclusive" (quotations omitted)). The NSA's structure conveys Congress's policy choice to enforce the statute through administrative penalties, not a private right of action.

Providers insist that without a private right of action, "not only would the purpose of the NSA be frustrated, the very structure of the NSA would fall apart." But our interpretation is compelled by the NSA's text and structure, both of which exclude a general private right of action. Nor does that interpretation obviously "frustrate" the NSA's purpose. Congress may have had good reasons to provide only a general administrative remedy, together with a strictly limited form of judicial review.

For example, in the first calendar year the NSA was operational, providers filed more than *thirty times* the number of IDR disputes HHS anticipated. *See* Brief for America's Health Insurance Plans as Amicus Curiae Supporting Appellee at 5–7, *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, No. 24-10561 (5th Cir. argued Feb. 24, 2025). By 2023, providers had initiated nearly 680,000 disputes. *Ibid.* Congress may have judged it better to have an administrative enforcement mechanism handle most award disputes instead of throwing open the floodgates of litigation. Understandably, Providers would prefer a different mechanism for resolving

provider-insurer disputes. But the wisdom of Congress's policy choice is beyond our judicial ken.[7]

In sum, Providers have not shown that, despite the NSA's express bar on judicial review in cases like this, Congress "affirmatively contemplated" a private right of action to enforce IDR awards.

B

We turn next to Providers' ERISA claim, which the district court dismissed for lack of standing.

To demonstrate standing for a derivative ERISA claim as healthcare providers, Providers must first obtain an assignment of benefits from individual plan beneficiaries. *See N. Cypress Med. Ctr. Operating Co.*, 781 F.3d at 191–92. Providers satisfy this requirement, as several HCSC beneficiaries assigned their rights to Appellants.

Providers must also show, however, that the individual plan beneficiaries for whom they are assignees suffered a concrete injury, had those beneficiaries brought the claim themselves. *See Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 729 (5th Cir. 2010) ("[A]n assignee . . . stands in the same position as its assignor stood." (ellipses in original) (quoting *Houk v. Comm'r of Internal Revenue*, 173 F.2d 821, 825 (5th Cir. 1949))); *see also Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020) ("There is no ERISA exception to Article III.").

---

[7] Amici American Hospital Association, *et al.*, suggest that declining to find an implied private right of action in the NSA "raises the question whether it is constitutional to wholly abrogate a core common-law right without providing a reasonable alternative remedy." But amici fail to present any authority that directly addresses this concern beyond mere suggestion, and, in any case, neither amici nor HCSC has explained why the NSA's administrative remedy is so inadequate as to violate the Constitution.

No. 24-10561

Providers claim the beneficiaries suffered concrete injuries when HCSC refused to provide them with out-of-network coverage benefits under the parties' contracts. We disagree. The NSA shields the beneficiaries from liability for any out-of-network coverage costs, so the beneficiaries have not suffered—and could not suffer—any concrete injury from HCSC's failure to cover medical bills that fall within the scope of the NSA.[8] Further, the beneficiaries had nothing to gain or lose in the IDR proceedings between Appellants and HCSC. That process exists entirely outside and independent of ERISA.

Providers argue the injury to beneficiaries is nonetheless cognizable because the beneficiaries have suffered a breach of contract and so have been denied a benefit of their bargain with HCSC. We disagree. This technical violation, if it amounts to one, does no actual harm to the beneficiaries and is consequently an abstract theory insufficient for Article III injury. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." (quoting *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 332 (7th Cir. 2019)); *Thole*, 590 U.S. at 541 ("If [plaintiffs] were to *win* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny more. The plaintiffs therefore have no concrete stake in this lawsuit.").

---

[8] *See* 42 U.S.C. § 300gg-135 (non-participating air ambulance providers "shall not bill, and shall not hold liable, [the] participant, beneficiary, or enrollee for a payment amount for such service furnished by such provider" beyond the patient's cost-sharing for the service).

No. 24-10561

In short, because the beneficiaries would lack Article III standing if they brought an ERISA claim on their own, Providers lack standing to bring a derivative ERISA claim as their assignees. *See Thole*, 590 U.S. at 547.[9]

C

Finally, the district court correctly dismissed Providers' quantum-meruit claim because they failed to allege that they provided a direct benefit to HCSC. Providers admit that Texas courts have held in other contexts that because healthcare services are undertaken for the patient's benefit, not the insurer's, the patient is the proper target of a healthcare provider's quantum-meruit claim. *See Tex. Med. Res., LLP v. Molina Healthcare of Texas, Inc.*, 659 S.W.3d 424, 437 (Tex. 2023). Providers merely argue that this is "a debatable proposition," and that the district court was "too hasty" in dismissing their quantum-meruit claim because it leaves them without a judicial remedy.

The district court was right. Providers did not render any services for HCSC's benefit. Instead they provided "air ambulance transports for [HCSC's] beneficiaries." Those beneficiaries are not plaintiffs in this case, so Providers plainly fail to allege facts that could satisfy the elements of a quantum-meruit claim under Texas law. *See Tex. Med. Res., LLP*, 659 S.W.3d at 436 ("[I]t is not enough to show that [the plaintiff's] efforts benefited [the defendant]. Rather, the plaintiff's efforts must have been undertaken *for* the person sought to be charged." (cleaned up) (emphasis and second and third

_____

[9] Providers contend that every circuit to consider this ERISA issue, including this court, has determined that the beneficiary suffered a concrete injury. Not so. Each of Providers' cited cases predates the NSA and is therefore inapposite. *See, e.g.*, *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284 (6th Cir. 2018).

alterations in original) (quoting *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985))).[10]

IV

The district court's judgment is AFFIRMED.

---

[10] The district court did not abuse its discretion in denying Providers' request for leave to amend. Providers have no cause of action under the NSA and do not explain which facts they could allege in an amended complaint to satisfy the elements of their ERISA or quantum-meruit claims. *See Porretto v. City of Galveston Park Bd. of Trs.*, 113 F.4th 469, 491 (5th Cir. 2024) ("[A] 'bare bones' request to amend pleadings 'remains futile when it "fail[s] to apprise the district court of the facts that [the plaintiff] would plead in an amended complaint." ' " (quoting *Edionwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017))).